Erica J. Van Loon (SBN 227712)
evanloon@nixonpeabody.com
Jacqueline Relatores (SBN 341583)
jrelatores@nixonpeabody.com
NIXON PEABODY LLP
300 South Grand Avenue, Suite 4100
Los Angeles, California 90071-3151
Tel: 213-629-6000
Fax: 213-629-6001

Matthew W. Costello*
Nixon Peabody LLP
Exchange Place
53 State Street
Boston, MA 02109-2835
Telephone: 617-345-1119
Facsimile: 877-710-2605
mcostello@nixonpeabody.com
*Motion for *pro hac vice* admission forthcoming

Attorneys for Plaintiff
Cody Barnes, professionally known as Lexi Love

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CODY BARNES, professionally known as LEXI LOVE,<br><br>               Plaintiff,<br><br>   v.<br><br>SELENA SCOLA,<br><br>             Defendant. | CASE NO.  3:25-cv-10837<br><br>**PLAINTIFF'S COMPLAINT FOR**<br>**(1) DECLARATORY JUDGMENT OF**<br>**INVALIDITY OF TRADEMARK**<br>**REGISTRATION (28 U.S.C. §§ 2201–2202),**<br>**(2) TRADEMARK INFRINGEMENT (15**<br>**U.S.C. § 1125(a)),**<br>**(3) UNFAIR COMPETITION (CAL. BUS. &**<br>**PROF. CODE § 17200),**<br>**(4) INTENTIONAL INTERFERENCE WITH**<br>**PROSPECTIVE ECONOMIC ADVANTAGE,**<br>**(5) INTENTIONAL INTERFERENCE WITH**<br>**CONTRACTUAL RELATIONS**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Cody Barnes, professionally known as Lexi Love ("Plaintiff"), by and through her attorneys of record, hereby complains and alleges as follows:

**INTRODUCTION**

1.    Plaintiff is a professional drag entertainer who has long been performing under the name "Lexi Love" in connection with her drag performances.  Since 2009, Plaintiff has used the LEXI LOVE mark continuously, throughout the United States, including in California, New York, Florida, Arizona, Alaska, New Mexico, Pennsylvania, Washington D.C., Texas, Colorado, Illinois, Massachusetts, Michigan, Nevada, Ohio, Tennessee, Kentucky, and West Virginia, and throughout the world, including in Australia.  Plaintiff's recognition grew substantially when she was selected to participate in the seventeenth season of *RuPaul's Drag Race* on MTV, which aired beginning in January 2025.

2.    Defendant Selena Scola ("Defendant") claims rights in the LEXI LOVE mark, including through U.S. Trademark Registration No. 7,727,806, which was filed on February 10, 2024 and registered on March 18, 2025.

3.    Beginning on or around August 2025, Defendant began asserting these purported rights against Plaintiff by filing hundreds of takedown requests against Plaintiff's social media accounts and content featuring Plaintiff, and pressuring venues and third parties to cancel Plaintiff's bookings and remove references to Plaintiff from promotional materials.  Defendant made a public spectacle of her claims, posting her demands with threats of legal action on X (formerly known as Twitter) and tagging third party accounts such as RuPaul's Drag Race (@RuPaulsDragRace), MTV (@MTV), the Emmys (@TelevisionAcad), Instagram (@instagram), Spotify (@Spotify), and Facebook (@Facebook).

4.    Defendant's actions have caused and continue to cause immense harm to Plaintiff, including loss of business, business opportunities, and merchandising/sales opportunities, harm to Plaintiff's reputation and goodwill, and loss of Plaintiff's ability to promote, market, and advertise her services, and to otherwise profit from her reputation and goodwill built up over fifteen years of hard work and use.

5.    Plaintiff seeks a declaration that Defendant's asserted trademark rights are invalid and unenforceable against Plaintiff.  Plaintiff further seeks injunctive relief to prevent further interference

and damages and other appropriate remedies arising from Defendant's unlawful conduct.

## PARTIES

6.      Plaintiff is an individual residing in Covington, Kentucky. Plaintiff is a drag performer and entertainer who is professionally known as "Lexi Love."

7.      On information and belief, Defendant is an individual residing in San Francisco, California. Defendant purports to own the rights to the LEXI LOVE mark, including through U.S. Reg. No. 7,727,806, for use in connection with various entertainment and talent management services in the nature of digital personas, virtual performers, and AI-driven talent.

## JURISDICTION AND VENUE

8.      This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and the Lanham Act, 15 U.S.C. § 1051 *et seq*. An actual, substantial, and justiciable controversy exists because Defendant has asserted rights in the LEXI LOVE mark against Plaintiff and contends that Plaintiff is infringing those rights. Plaintiff denies these allegations on the basis that Plaintiff is the senior and rightful owner of the LEXI LOVE mark, and that Defendant's registration and conduct infringe Plaintiff's rights.

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1338(b) because this action arises under the Lanham Act and includes a related claim of unfair competition.

10.     The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because they are so related to the federal claims that they form part of the same case or controversy.

11.     Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendant resides in this district, is subject to personal jurisdiction in this district, and because a substantial part of the events or omissions giving rise to the claims occurred within this district.

12.     This Court has personal jurisdiction over Defendant because Defendant resides in this district, has availed herself of the privileges and protections of the laws of California, and has directed enforcement activities regarding the LEXI LOVE mark in this district against Plaintiff.

**PLAINTIFF'S LONGSTANDING AND CONTINUOUS USE IN THE LEXI LOVE MARK**

13.     Plaintiff is a professional drag performer and entertainer who has performed, marketed, and promoted her services under the name "Lexi Love" for fifteen years. Plaintiff has continuously used the LEXI LOVE mark in commerce since 2009 in connection with live performances, in-person and televised appearances, online promotional content and other social media engagement activities, and related merchandise and branding.

14.     Plaintiff has performed under the LEXI LOVE mark across the United States, including in California, New York, Florida, Arizona, Alaska, New Mexico, Pennsylvania, Washington D.C., Texas, Colorado, Illinois, Massachusetts, Michigan, Nevada, Ohio, Tennessee, Kentucky, and West Virginia.  Plaintiff's performances have been publicly advertised on social media and attended by audiences traveling from various states.

15.     Plaintiff has maintained an online presence where she promotes her entertainment services and engages with fans through platforms including Instagram, Facebook, X, Cameo, Linktree, Spotify, Apple Music, and Amazon Music under the account names (or handles) @mslexilove, @lexifromdragrace, @lexilovets, and @LexifromDr.  Plaintiff heavily relies on her ability to market, promote, and advertise herself through these platforms.

16.     Plaintiff's career performing under the name "Lexi Love" is well documented on social media.  For example, the images below show promotional flyers posted on social media for performances featuring Plaintiff at Club Nonta in Ohio on April 30, 2010, The Hot Spot in Kentucky on July 16, 2017, and at the Lawrenceburg Pride Drag Fundraiser in Indiana on February 23, 2020:



1
2
3
4
5
6
7
8
9
10
11



12    17.    As additional examples, the images below show Facebook posts made by Cincinnati

13    Pride dated September 3, 2019 and August 14, 2022, promoting Plaintiff's performances at Kings

14    Island in Ohio:

15
16
17
18
19
20



21
22
23
24
25
26
27
28



18.     Plaintiff became a regular cast member at Play Louisville in Kentucky in 2021, with her performances and entertainment services frequently promoted on social media.  The below images feature Play's Instagram announcement on April 28, 2021 of Plaintiff joining its cast, Play's post on September 7, 2022 promoting Plaintiff's performance at Play's Nashville, Tennessee location, and Play's post on December 28, 2023 promoting a *RuPaul's Drag Race* watch party hosted by Plaintiff:







19.    Plaintiff's reach and recognition further spans from coast to coast. For example, the images below show promotional materials for Plaintiff's performances at Rocco's in West Hollywood,

California, on June 6, 2022 and in Florida on April 29, 2023:




20.    Plaintiff's national and international recognition dramatically increased when she competed on season 17 of *RuPaul's Drag Race* in 2025, resulting in substantial public association between Plaintiff and the LEXI LOVE mark, significant online following, and widespread media attention. Plaintiff became a much-loved contestant on the show, eventually placing third among fourteen contestants. One article commented on the public's recognition of Plaintiff, noting that Plaintiff's Instagram account, @mslexilove, "went from a very significant pre-season following of 17,400 to a total of 216,500 as of Monday, April 21[, 2025.]"[1] Plaintiff's popularity continues to grow, with her Instagram following nearing 270,000 as of December 17, 2025.[2] Through her continuous and consistent use, Plaintiff has developed substantial rights and significant goodwill in the LEXI LOVE mark, and the public associates the mark with Plaintiff's identity and entertainment services.

---

[1] Bernardo Sim, *Insta-gag! See how many IG followers 'Drag Race' season 17's queens snatched*, OUT (Apr. 22, 2025), https://www.out.com/drag/rupauls-drag-race-season-17-queens-instagram-most-popular#rebelltitem5.

[2] *See* https://www.instagram.com/lexilovets/, *accessed on* December 17, 2025.

## DEFENDANT'S ABANDONMENT OF THE LEXI LOVE MARK AND ATTEMPTS TO RE-CLAIM USE

21.      Defendant is the registrant of U.S. Reg. No. 7,727,806 (the "'806 Registration") for the LEXI LOVE mark in International Classes 35 and 41 for entertainment and talent management services involving "digital personas, virtual performers, and AI-driven talent."[3]

22.      Defendant filed the application on February 10, 2024, and the mark subsequently registered on March 18, 2025.  Accordingly, Plaintiff's use of the LEXI LOVE mark in commerce pre-dates Defendant's filing date by fifteen years.

23.      The '806 Registration claims a first use and use in commerce date of August 16, 2004 for each class and service identified in the registration. On information and belief, Defendant's historical use was in connection with adult content, and not the "digital personas, virtual personas, and AI-driven talent" services now recited.  There has been no continuous, bona fide use in commerce by Defendant of the LEXI LOVE mark for the services newly identified in the '806 Registration dating back to 2004.

24.      In support of Defendant's application for the '806 Registration, Defendant initially submitted a specimen of a partial copy of a 2009 WIPO (World Intellectual Property Organization) domain name decision regarding lexilove.com (the "WIPO decision").[4]  According to the 2009 WIPO decision, Defendant was in the business of adult entertainment, including live, televised and movie appearances and relied on a different trademark registration for the LEXI LOVE mark, U.S. Reg. No. 3,475,773.   The United States Patent and Trademark Office ("USPTO") examiner for the '806 Registration refused this specimen for failing to show the LEXI LOVE mark in the specified classes.

25.      The USPTO also required amendments to the identified services, proposing that Defendant amend its services by adding "adult film stars."  Defendant declined, instead opting to recast the services to encompass "digital personas, virtual performers, and AI-driven talent" and

---

[3] Registration available through the United States Patent and Trademark Office's website at https://tsdr.uspto.gov/documentviewer?caseId=sn98401022&docId=ORC20250313024443&linkId=1#docIndex=0&page=1.

[4] A full copy of the WIPO decision is available at https://www.wipo.int/amc/en/domains/decisions/html/2009/d2009-0417.html.

submitted a new specimen reflecting use of these different services.

26.     The specimen accepted by the USPTO for the '806 Registration depicts screenshots of lexilove.ai, a website that was registered on February 9, 2024,[5] and which is unrelated to adult content:



27.     The registration relied upon in the WIPO decision, U.S. Reg. No. 3,475,773, was cancelled on March 6, 2015 due to Defendant's failure to file a Section 8 declaration supporting continued use of the LEXI LOVE mark.  This registration covered entertainment services featuring adult content and, like the '806 Registration, claimed a first use and use in commerce date of August 16, 2004.[6]

28.     Moreover, Defendant has publicly reiterated that she abandoned all services associated with adult content in 2010.[7] Defendant admitted that she "was unhirable" if employers found out about her past in adult content under the "Lexi Love" name, and thus she had to be "really,

---

[5] According to GoDaddy's WHOIS Database, available at
https://www.godaddy.com/whois/results.aspx?domain=lexilove.ai.

[6] Registration available through the United States Patent and Trademark Office's website at
https://tsdr.uspto.gov/documentviewer?caseId=sn77350200&docId=ORC20080729010639&linkId=1#docIndex=0&page=1.

[7] *See* Defendant's March 26, 2025 social media post on X, available at
https://x.com/LexiLove/status/1905133364933484699.

really careful about anonymity."[8]

29.     Defendant therefore abandoned any use of the LEXI LOVE mark pre-dating Plaintiff's own use.

30.     Defendant continued to file applications for the same identical mark for varying entertainment services. Defendant filed and registered U.S. Reg. No. 4,843,150 in 2015, which was again cancelled on May 22, 2022 due to Defendant's failure to file a Section 8 declaration supporting any continued use of the LEXI LOVE mark. Defendant filed another application, U.S. Ser. No. 9/7,428,288, which was abandoned on June 22, 2023 due to Defendant's failure to respond.

31.     Defendant's cancellation and abandonment history demonstrates Defendant's failure to maintain continuous use of the LEXI LOVE mark in commerce in connection with any consistent, identifiable set of services.

32.     By contrast, Plaintiff has continuously and prominently used the LEXI LOVE mark in commerce since 2009 for entertainment services, namely, drag performances and related appearances.  Her live performances have been widely promoted on social media, and videos of her performances have been published and circulated on sites such as Facebook and YouTube.

33.     Plaintiff is therefore the senior user and owner of the rights in the LEXI LOVE mark for entertainment services.  Defendant therefore cannot enforce any alleged rights to the LEXI LOVE name against Plaintiff.

34.     Defendant's attempt to resume use of and repurpose the LEXI LOVE mark for a new business venture featuring "digital personas, virtual performers, and AI-driven talent" comes after Plaintiff's use of the mark and infringes upon Plaintiff's own senior rights in the mark.

## DEFENDANT'S ONGOING HARASSMENT OF PLAINTIFF

35.     Beginning on or around August 2025, Defendant initiated a public campaign of harassment designed to erase Plaintiff's existence as "Lexi Love" by filing numerous trademark-based takedown requests targeting Plaintiff's accounts and content on Linktree, X, Cameo, Facebook, Instagram, Spotify, Apple Music, and Amazon Music and by demanding that venues and third parties

---

[8] Jeremy Glass, I Got Into Porn on a Dare. Here's How I Got Out, THRILLIST (Mar. 3, 2016), https://www.thrillist.com/sex-dating/nation/how-to-get-out-of-porn.

cancel Plaintiff's bookings and remove references to the LEXI LOVE mark.

36. Defendant's takedown requests have caused the removal of several of Plaintiff's accounts and content, most of which Plaintiff has been unable to permanently restore due to Defendant's persistent and repeated unwarranted takedown requests.

37. Not only did Defendant cause the removal of Plaintiff's accounts, but Defendant also created new accounts to fill platforms where she previously did not exist – effectively and intentionally replacing Plaintiff's presence. For example, Defendant sought removal of Plaintiff's Spotify account, then opened her own Spotify account under the LEXI LOVE name and "released" an album on or around August 16, 2025.

38. Defendant's actions have made it nearly impossible for Plaintiff to market, promote, and advertise her entertainment services and conduct business operations under her longstanding professional name.

39. Defendant has further directed unwarranted takedowns and demands to venues and third parties who book Plaintiff, causing cancellations of scheduled performances, including Honolulu Pride 2025 hosted by the Hawai'i LGBT Legacy Foundation, Big Top at Beaux Nightclub in San Francisco, and Jackson Pride 2025 hosted by Jackson Pride in Tennessee, and resulting in thousands of dollars in lost revenue.

40. Defendant has gone so far as to call venues in foreign countries demanding they cancel Plaintiff's upcoming performances, and filing foreign trademark applications to prevent Plaintiff from performing abroad.

41. Defendant has extended takedown requests to third parties who support Plaintiff. For example, SADBrunch, a black owned drag entertainment company that hosts drag events throughout the United States, had its entire Instagram account disabled for promoting one of its events featuring Plaintiff. As a result, SADBrunch is no longer able to promote, advertise, or market *any* of its events.

42. Defendant's overreaching and harassing conduct has caused and is causing venues and other third parties to avoid doing business with Plaintiff, directly causing Plaintiff to lose business opportunities and harming her business relationships and professional reputation.

43. Defendant has even wrongly attempted to publicly cast Plaintiff as the aggressor who

is somehow harming Defendant. Defendant created a "Trademark Defense" webpage riddled with erroneous legal and factual assertions and posted a link on X directing users to the webpage, falsely stating that Plaintiff "has engaged in a calculated pattern of bad-faith deception – manipulating public sympathy and weaponizing misinformation to exploit her fanbase for financial gain while defaming [Defendant] . . . See images for a preview 👀 🙌"[9]

44.     Defendant has chosen to repeatedly mislead the public and publicly highlight Plaintiff's personal struggles and hardships as allegedly damaging Defendant's reputation, stating:[10]

> For absolute clarity, I was not a contestant on RuPaul's Drag Race. I am not transgender.  I am not a person living with HIV. I am not a person who was formerly unhoused. I have never been trafficked in the sex market. I am not suffering from drug addiction, nor have I ever attended rehab for drug addiction. These personal disclosures were made publicly by the contestant [Plaintiff] while using my name in commerce without consent. Such infringement causes significant brand confusion, damages my personal and professional reputation, and creates false associations with experiences and conditions that do not apply to me or my brand . . .

45.     Defendant's actions against Plaintiff and the noticeable removal of Plaintiff's content and accounts generated significant publicity among online communities and publications.[11] Defendant then attacked publications for stating certain immutable facts, including that her trademark registration was cancelled in March 2015 and that Defendant was a "porn actor," and falsely claimed those facts as inaccurate and/or defamatory, and demanded unwarranted corrections thereof.[12]

46.     Defendant appears to thrive off the publicity garnered over the dispute, re-posting articles about the dispute and posting about her "press run" discussing her many attempts to remove Plaintiff's accounts and implying legal action against the platforms themselves for hosting Plaintiff's

---

[9] *See* https://x.com/LexiLove/status/1977882533527507284, accessed December 17, 2025.

[10] *See* https://www.lexilove.com/trademark-defense-1, accessed December 17, 2025.

[11] *See, e.g.*, Glenn Garner, 'RuPaul's Drag Race' Alum Lexi Love Responds to Porn Actor's Trademark Infringement Claim, DEADLINE (Aug, 23, 2025), https://deadline.com/2025/08/rupauls-drag-race-lexi-love-trademark-infringement-claim-1236496081/.

[12] *See* https://x.com/LexiLove/status/1959824420203380802, accessed December 17, 2025.

accounts:





47.    Despite Defendant's numerous misstatements made to the general public, to online platforms, and to other third parties, Defendant has unreasonably refused any communications offline directly with Plaintiff.

48.    On November 20, 2025, Plaintiff's counsel sent a letter to Defendant describing Plaintiff's rights and demanding that Defendant cease her harassing and interfering conduct against Plaintiff.  Defendant did not respond.

49.    Defendant instead escalated her activities by seeking further takedowns on Instagram

and Facebook and sending a cease-and-desist notice to mybestjudy, an online merchandise store exclusively featuring drag performers, demanding it remove all merchandise affiliated with Plaintiff.

50.     On December 8, 2025, Plaintiff responded to Defendant's cease-and-desist notice to mybestjudy addressing the deficiencies in Defendant's alleged trademark rights and reiterating her prior demands. Defendant again did not respond.

51.     Defendant's actions have created a reasonable apprehension that Defendant will continue to enforce her alleged rights to the LEXI LOVE mark against Plaintiff, impairing Plaintiff's ability to use her longstanding professional name and causing extreme uncertainty in Plaintiff's business plans.

52.     Plaintiff denies that Defendant possesses any valid rights in the LEXI LOVE mark that can be enforced against Plaintiff. Plaintiff further contends that the '806 Registration is invalid because any use by Defendant is likely to cause confusion with Plaintiff's longstanding and pre-existing use for entertainment services.

53.     Defendant has engaged in conduct that has disrupted or attempted to disrupt Plaintiff's existing and prospective business relationships, including communications and dealings with platforms, venues, producers, agents, brands, collaborators, or other third parties who work with Plaintiff in connection with her professional activities.

54.     Defendant's conduct has caused and continues to cause Plaintiff economic harm and has interfered with Plaintiff's ability to book opportunities, maintain her online presence, release branded products, and continue developing her professional brand under the LEXI LOVE mark.

55.     Defendant's conduct has been unfair, has offended established public policy, and is immoral, unethical, oppressive, unscrupulous, and substantially injurious such that any benefit to Defendant cannot possibly outweigh the immense harm it is causing Plaintiff, Plaintiff's business associates, and the general public.

56.     In view of Defendant's conduct, Plaintiff needs and is entitled to a judicial declaration that Defendant owns no protectable trademark rights in the LEXI LOVE mark, and Plaintiff therefore cannot infringe upon Defendant's purported rights. Absent a declaration to this effect, Defendant will continue to wrongfully allege that Plaintiff is infringing upon Defendant's alleged trademark rights,

thereby causing Plaintiff irreparable injury and damage.

## FIRST CLAIM – DECLARATORY JUDGMENT OF INVALIDITY OF
## U.S. REG. NO. 7,727,806
## (28 U.S.C. §§ 2201–2202; 15 U.S.C. § 1114)

57.     Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

58.     An actual controversy exists regarding the parties' rights to the LEXI LOVE mark to warrant issuance of declaratory judgment that Defendant owns no valid trademark rights in the LEXI LOVE mark as of 2009.

59.     A judicial declaration is necessary and appropriate so that Plaintiff may ascertain her right to continue using the LEXI LOVE mark in connection with Plaintiff's services as a drag performer and entertainer.

60.     Defendant's U.S. Reg. No. 7,727,806 is invalid and/or unenforceable against Plaintiff because Defendant lacks priority, has abandoned all uses prior to 2009, and has not established continuous, bona fide use in commerce for the services recited as of the claimed first-use dates.

61.     Plaintiff is entitled to a declaratory judgment that Defendant owns no valid trademark rights in the LEXI LOVE mark in connection with entertainment services as of 2009. Plaintiff therefore has not violated any purported rights in the LEXI LOVE mark.

## SECOND CLAIM – TRADEMARK INFRINGEMENT
## (15 U.S.C. § 1125(A))

62.     Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

63.     Plaintiff owns valid and protectable common law rights in the LEXI LOVE mark in connection with entertainment services which have been established through continuous use in commerce since 2009 and the development of substantial goodwill and secondary meaning.

64.     Defendant's unauthorized use in commerce of the LEXI LOVE mark, including promoting entertainment services online and on social media, is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's services and is likely to cause consumers to believe that Defendant's services are sold, authorized, endorsed, or sponsored by Plaintiff, or that

Defendant is in some way affiliated with or sponsored by Plaintiff.

65.     Defendant's actions are likely to cause, and have caused, actual confusion among consumers, booking venues, promoters, platforms, and other third parties seeking Plaintiff's services.

66.     Defendant's conduct constitutes trademark infringement and unfair competition in violation of 15 U.S.C. § 1125(a).

67.     Defendant's conduct alleged herein is causing immediate and irreparable harm and injury to Plaintiff and to her goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

68.     Plaintiff has suffered and will continue to suffer damages as a result of Defendant's conduct, including lost revenue, lost opportunities, and corrective expenses.

69.     Plaintiff is entitled to injunctive relief, actual damages, Defendant's profits, enhanced damages and profits, and costs and attorneys' fees as allowed under the Lanham Act.

## THIRD CLAIM – UNFAIR COMPETITION
## (CAL. BUS. PROF. CODE. § 17200)

70.     Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

71.     Defendant has engaged in unfair business acts and practices in violation of California Business and Professions Code § 17200 *et seq.* by, among other things, asserting invalid trademark rights, initiating systematic takedowns, interfering with Plaintiff's bookings and ability to promote her business and sell branded products, replacing Plaintiff's presence on platforms, and otherwise engaging in conduct that is causing significant harm.

72.     Defendant's conduct was intended to cause harm and has actually caused harm to Plaintiff by, among other things, restricting Plaintiff's ability to promote, market, and advertise her services and pressuring third parties into cancelling Plaintiff's booked appearances and performances.

73.     Defendant's actions constitute unfair business practices because it offends established public policy, and is immoral, unethical, oppressive, unscrupulous, and substantially injurious such that any benefit to Defendant cannot possibly outweigh the immense harm it is causing Plaintiff, Plaintiff's business associates, and the general public.

74.    As a direct and proximate result of Defendant's unfair competition, Plaintiff has suffered and continues to suffer injury in fact and actual monetary loss, including lost sales and opportunities, diminished goodwill, and harm to business relations and professional reputation.

75.    Plaintiff seeks restitution, injunctive relief, disgorgement of ill-gotten gains, and any other relief the Court deems proper under Cal. Bus. Prof. Code. § 17200 *et seq*.

## FOURTH CLAIM – INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

76.    Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

77.    Plaintiff had, and continues to have, valid economic relationships and reasonable expectancies with third parties in the entertainment industry, including platforms, agents, venues, collaborators, brands, and other business partners.

78.    Defendant had knowledge of these prospective relationships and of Plaintiff's expectancy of future economic advantage.

79.    Defendant intentionally and improperly engaged in acts designed to disrupt these relationships, including by asserting invalid trademark rights in the LEXI LOVE mark and demanding the removal of any promotional materials and branded products featuring Plaintiff and the cancellation of Plaintiff's performances and appearances, and did in fact disrupt Plaintiff's prospective economic advantage.

80.    As a proximate result of Defendant's wrongful and intentional interference, Plaintiff has suffered economic harm and damages in an amount to be proven at trial.

81.    Defendant's conduct was wrongful by a legal measure independent of the interference itself, including violations of the Lanham Act and California Unfair Competition Law.

## FIFTH CLAIM – INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

82.    Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

83.    Plaintiff had valid and existing contracts with third parties for her entertainment services.

84.     Defendant knew Plaintiff had contractual relations with these third parties.

85.     Defendant intentionally and improperly engaged in acts designed to disrupt these contractual relations, including by asserting invalid trademark rights in the LEXI LOVE mark and demanding the removal of any promotional materials and branded products featuring Plaintiff and the cancellation of Plaintiff's performances and appearances.

86.     Defendant's intentional acts did in fact disrupt Plaintiff's contractual relations, including for her performances and appearances at Honolulu Pride 2025 hosted by the Hawai'i LGBT Legacy Foundation, Big Top at Beaux Nightclub, and at Jackson Pride 2025 hosted by Jackson Pride.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

1.     Declare that U.S. Trademark Registration No. 7,727,806 is invalid and unenforceable as against Plaintiff.

2.     Declare that Defendant owns no enforceable trademark rights in the LEXI LOVE mark in connection with entertainment services.

3.     Declare that Plaintiff's use of the LEXI LOVE mark has not infringed any trademark rights asserted or claimed by Defendant.

4.     Permanently enjoin Defendant from asserting or enforcing any rights in the LEXI LOVE mark against Plaintiff.

5.     Order Defendant to formally abandon with prejudice any and all applications to register the LEXI LOVE mark.

6.     Order Defendant to cancel with prejudice any and all of its registrations for the LEXI LOVE mark.

7.     Find that Defendant has violated Section 43(a) of the Lanham Act.

8.     Permanently enjoin Defendant from marketing, advertising, promoting, or selling services bearing the LEXI LOVE mark or engaging in any activity that infringes Plaintiff's rights in the LEXI LOVE mark.

9.     Award Plaintiff up to an amount three times the amount of her actual damages in accordance with 15 U.S.C. § 1117(a).

10.      Award Plaintiff all damages caused by Defendant's intentional interference of Plaintiff's prospective economic advantage and contractual relations.

11.      Award Plaintiff the disgorgement of any profits realized by Defendant's wrongful acts in accordance with 15 U.S.C. § 1117(a) and Cal. Bus. Prof. Code. § 17200 et seq.

12.      Award Plaintiff all pre-judgment and post-judgment interest as permitted by law.

13.      Award Plaintiff her reasonable attorneys' fees and costs pursuant to applicable law, including 15 U.S.C. § 1117 and any other authority that may apply.

14.      Grant all such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury.

DATED:    December 19, 2025                NIXON PEABODY LLP

By: */s/ Erica J. Van Loon*

Erica J. Van Loon (SBN 227712)
evanloon@nixonpeabody.com
Jacqueline Relatores (SBN 341583)
jrelatores@nixonpeabody.com
NIXON PEABODY LLP
300 South Grand Avenue, Suite 4100
Los Angeles, California 90071-3151
Tel: 213-629-6000
Fax: 213-629-6001

Matthew W. Costello
Nixon Peabody LLP
Exchange Place
53 State Street
Boston, MA 02109-2835
Telephone: 617-345-1119
Facsimile: 877-710-2605
mcostello@nixonpeabody.com

*Attorneys for Plaintiff*
Cody Barnes, professionally known as Lexi Love