Reid A. Winthrop (SBN 223527)
Henry Harmeling IV (SBN 207673)
**WINTHROP LAW GROUP, P.C.**
120 Newport Center Dr.
Newport Beach, California 92660
Phone:  949-269-3256 | Fax:  949-432-3526
reid@winthroplawgroup.com
henry@winthroplawgroup.com

Attorneys for Selena Scola

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CODY BARNES, professionally known as LEXI LOVE, <br><br> Plaintiff, <br><br> vs. <br><br> SELENA SCOLA, <br><br> Defendant. <br> —————————————————— <br> SELENA SCOLA, aka LEXI LOVE, <br><br> Counter-Plaintiff, <br><br> vs. <br><br> CODY BARNES, an individual; PARAMOUNT SKYDANCE CORPORATION, a Delaware corporation; and WORLD OF WONDER PRODUCTIONS, INC., a California corporation, <br><br> Counter-Defendants. | Case No.: 3:25-cv-10837-RS <br><br> **DEFENDANT SELENA SCOLA'S ANSWER TO COMPLAINT; COUNTERCLAIMS AGAINST COUNTER-DEFENDANTS CODY BARNES, WORLD OF WONDER PRODUCTIONS, INC. AND PARAMOUNT SKYDANCE CORPORATION** <br><br> **REQUEST FOR JURY TRIAL** <br><br> Honorable Richard G. Seeborg <br> Courtroom 3–17th Floor <br><br> Complaint filed:  December 19, 2025 |

1

SCOLA'S ANSWER AND COUNTERCLAIMS

## SCOLA'S ANSWER AND COUNTERCLAIMS

Defendant Selena Scola ("Scola") answers the Complaint of Plaintiff Cody Barnes ("Barnes") and asserts affirmative defenses, and counterclaims against Barnes and third-party defendants World of Wonder Productions, Inc. ("WOW") and Paramount Skydance Corporation ("Paramount") (collectively, the "Third-Party Defendants").

## ANSWER

Scola hereby responds to the allegations of Plaintiff Barnes in their Complaint as follows:

**GENERAL DENIAL**

Pursuant to Federal Rule of Civil Procedure 8(b)(3), Scola denies generally and specifically each and every allegation, claim for relief, and prayer for damages in the Complaint, except those expressly admitted herein.

## PARTIES, JURISDICTION, AND VENUE

1.      Scola lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1, and on that basis, denies them.

2.      Scola admits that she owns and asserts rights in the LEXI LOVE mark, including through U.S. Trademark Registration No. 7,727,806 ("Reg. No. 7,727,806"), filed February 10, 2024, and registered March 18, 2025. Scola denies that these rights are merely purported and denies any implication that her registrations are invalid or unenforceable.

3.      Scola admits that she has sent takedown requests and demand letters asserting her federal trademark rights against Plaintiff and third parties using the LEXI LOVE mark without authorization, and that she communicated publicly about those rights. Scola denies that these enforcement actions were improper, unwarranted, or constitute a "public spectacle," and denies the remaining allegations of Paragraph 3.

4.      Scola denies the allegations of Paragraph 4. Scola specifically denies that her lawful enforcement of her federal trademark rights has caused Plaintiff any cognizable legal harm. Scola affirmatively states that Plaintiff's harm, if any, is a direct and foreseeable consequence of Plaintiff's own infringing conduct.

5. Paragraph 5 states Plaintiff's requested relief, to which no response is required. To the extent a response is required, Scola denies that Plaintiff is entitled to any of the relief sought.

6. Scola lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6, and on that basis denies them.

7. Scola admits that she resides in San Francisco, California. Scola further admits that she holds active U.S. Registration No. 7,727,806 (Principal Register), registered March 18, 2025, based on an application filed on February 10, 2024, covering entertainment and talent management services in connection with, among other things, digital personas, virtual performers, and AI-driven talent, in International Classes 035 and 041, with first use in commerce claimed as August 16, 2004. Scola denies the remaining allegations in Paragraph 7, including any characterization of her ownership rights as merely "purported."

8. Paragraph 8 contains legal conclusions to which no response is required. To the extent a response is required, Scola admits that Plaintiff's action purports to assert claims under the Declaratory Judgment Act and the Lanham Act. Except as expressly admitted, Scola denies all remaining allegations in Paragraph 8, including that Plaintiff is the senior or rightful owner of the LEXI LOVE mark and that Scola's registration or conduct infringes Plaintiff's rights.

9. Paragraph 9 contains legal conclusions to which no response is required. To the extent a response is required, Scola does not contest the Court's subject matter jurisdiction over the federal claims.

10. Paragraph 10 contains legal conclusions to which no response is required. To the extent a response is required, Scola does not contest the Court's exercise of supplemental jurisdiction over the related state law claims.

11. Paragraph 11 contains legal conclusions to which no response is required. To the extent a response is required, Scola does not contest that venue is proper in this district.

12. Paragraph 12 contains legal conclusions to which no response is required. To the extent a response is required, Scola admits that she is not aware of a reason or basis to dispute the personal jurisdiction of this Court over her for the claims asserted in the Complaint. Scola denies the allegations to the extent they assert conclusions of law adverse to Scola.

SCOLA'S ANSWER AND COUNTERCLAIMS

**ALLEGATIONS REGARDING PLAINTIFF'S CLAIMED USE**

13. Scola lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13, and on that basis denies them.

14. Scola lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14, and on that basis denies them.

15. Scola lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15, and on that basis denies them.

16. Scola lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16, and on that basis denies them. Paragraph 16 refers to images that speak for themselves, and Scola denies any characterizations thereof.

17. Scola lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17, and on that basis denies them. Paragraph 17 refers to images that speak for themselves, and Scola denies any characterizations thereof.

18. Scola lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18, and on that basis denies them. Paragraph 18 refers to images that speak for themselves, and Scola denies any characterizations thereof.

19. Scola lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19, and on that basis denies them. Paragraph 19 refers to images that speak for themselves, and Scola denies any characterizations thereof.

20. Scola lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20, and on that basis denies them. To the extent Paragraph 20 refers to publicly-available websites, web pages, or social media pages, such websites, web pages, or social media pages speak for themselves, and Scola denies any characterizations thereof. Scola further denies that Plaintiff has developed trademark rights in the LEXI LOVE mark superior to Scola's.

**ALLEGATIONS REGARDING TRADEMARK REGISTRATION AND ABANDONMENT**

21. Scola admits that she is the registrant of Reg. No. 7,727,806 for the LEXI LOVE mark in International Classes 35 and 41, covering "talent agencies for performing artists being both human clients and digital talent in the nature of digital personas, virtual performers, and AI-driven talent;

Talent management services for performing artists being both human clients and digital talent in the nature of digital personas, virtual performers, and AI-driven talent" (IC 35) and "entertainment services in the nature of live audio performances by performing artists being both human clients and digital talent in the nature of digital personas, virtual performers, and AI-driven talent; Entertainment services in the nature of live visual and audio performances by performing artists being both human clients and digital talent in the nature of digital personas, virtual performers, and AI-driven talent; Personal appearances by an actor as a spokesperson for entertainment and education purposes" (IC 41). Scola denies any allegation inconsistent with the scope, validity, or enforceability of that registration.

22.    Scola admits that the underlying application for Reg. No. 7,727,806 was filed on February 10, 2024, and registered on March 18, 2025. Scola lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22, and on that basis denies them.

23.    Scola admits that Reg. No. 7,727,806 claims a first use in commerce date of August 16, 2004, for services in International Class 41. Scola denies that her historical use was limited to adult content or that there has been no continuous, bona fide use in commerce for the services identified in Reg. No. 7,727,806. Scola affirmatively states that she has continuously used the LEXI LOVE mark in connection with entertainment and entertainment-adjacent services since 2004, encompassing work in film, television, voice acting, music, AI entertainment, live entertainment (hosting at venues, being a live entertainer, performing music, dance shows), and digital content. Scola denies the remaining allegations of Paragraph 23.

24.    Paragraph 24 refers to documents that speak for themselves and Scola denies any characterizations thereof. Scola admits that the USPTO examiner found Scola's initial specimen for Reg. No. 7,727,806 insufficient to show use of the LEXI LOVE mark in the specified classes. Scola affirmatively states that she subsequently submitted a substitute specimen showing the LEXI LOVE mark used in commerce in connection with the services specified in International Class 041, and this specimen was accepted by the examiner. Scola denies any implication that this procedural development undermines the validity of her registration or federal trademark rights.

25. Scola admits that the USPTO required she amend the identification of services for Reg. No. 7,727,806 to remove mention of Lexi Love, the applied-for mark, because the services appeared to be performed primarily for the benefit of applicant, namely, Lexi Love, rather than for others, and thus were not registrable. Scola denies the remaining allegations of Paragraph 25 and affirmatively states the USPTO examiner proposed replacing mentions of "Lexi Love" with "adult film stars" in the identification of services, and that Scola elected instead to replace "Lexi Love" with "both human clients and digital talent, including digital personas, virtual performers, and AI-driven talent."

26. Scola admits that the specimen accepted by the USPTO for Reg. No. 7,727,806 includes screenshots from lexilove.ai, but denies any characterization thereof. Scola lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 26, and on that basis denies them.

27. Scola admits that prior registrations for LEXI LOVE issued, including U.S. Reg. No. 3,475,773, which was canceled on March 6, 2015, for failure to file a Section 1058 declaration. Scola denies any allegation that such cancellations negate her senior common-law rights or current federal registration. Scola admits Reg. No. 3,475,773 claimed a first use in commerce of August 16, 2004, but denies the remaining allegations of Paragraph 27, including the characterization of the services identified in Reg. No. 3,475,773.

28. Paragraph 28 refers to a social media post and publicly accessible webpage that speak for themselves, and Scola denies any characterizations thereof. Paragraph 28 also states legal conclusions to which no response is required. To the extent a response is required, Scola denies the legal conclusions stated in Paragraph 28. Scola denies the remaining allegations in Paragraph 28.

29. Scola denies the allegations of Paragraph 29.

30. Scola admits that prior registrations for LEXI LOVE issued, including U.S. Reg. No. 4,843,150, which was canceled for failure to file a Section 1058 declaration, but denies that it was canceled on May 22, 2022. Scola admits Application Serial No. 97428288, filed on May 25, 2022, was abandoned for failure to respond to the USPTO's Nonfinal Office Action. Scola lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 30,

SCOLA'S ANSWER AND COUNTERCLAIMS

and on that basis denies them. Scola denies any implication that these procedural events negate her senior common-law rights or current federal registration of the LEXI LOVE mark

31.    Scola denies the allegations of Paragraph 31.

32.    Scola lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32, and on that basis denies them.

33.    Paragraph 33 contains legal conclusions to which no response is required. To the extent a response is required, Scola denies the legal conclusions stated in Paragraph 33 and further denies the allegations contained therein.

34.    Paragraph 34 contains legal conclusions to which no response is required. To the extent a response is required, Scola denies the legal conclusions stated in Paragraph 34 and further denies the allegations contained therein.

## ALLEGATIONS REGARDING ENFORCEMENT CONDUCT

35.    Scola denies that her enforcement activities constitute a "campaign of harassment." Scola admits that she sent trademark-based takedown requests to social media platforms and other third parties regarding Plaintiff's unauthorized and unlawful use of the LEXI LOVE mark. Scola denies the remaining allegations of Paragraph 35.

36.    Scola admits that her enforcement efforts have resulted in the removal of certain content associated with Plaintiff's use of the LEXI LOVE mark. Scola denies that her enforcement efforts were "unwarranted." Scola lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 36, and on that basis denies them.

37.    Scola admits that she took steps to enforce her trademark rights on Spotify and other platforms and that she has a Spotify presence under the LEXI LOVE name. Scola denies the remaining allegations of Paragraph 37.

38.    Scola denies the allegations of Paragraph 38.

39.    Scola admits that she directed her enforcement activities to certain venues and third parties promoting Plaintiff under the LEXI LOVE mark, including in connection with events referenced in Paragraph 39. Scola denies the remaining allegations of Paragraph 39, including any characterization of her enforcement efforts as unwarranted or improper.

40.     Scola admits that she has communicated with venues in other countries regarding her trademark rights and has pursued international trademark protection. Scola denies that these lawful enforcement activities were improper. Scola denies the remaining allegations of Paragraph 40.

41.     Scola admits that she directed her enforcement activities to third parties promoting infringing content. Scola lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 41, and on that basis denies them.

42.     Scola denies the allegations of Paragraph 42.

43.     Scola admits that she has publicly discussed her trademark rights and disputes she has with Plaintiff. Scola denies that her statements were erroneous or false. Scola denies the remaining allegations of Paragraph 43.

44.     Scola admits to making the statements quoted in Paragraph 44. Scola denies the remaining allegations of Paragraph 44.

45.     Scola admits that certain media reports about this dispute contained factual inaccuracies and that she sought to correct those inaccuracies. Scola denies that her requested corrective actions were unwarranted. Scola further denies that the statements in the referenced Deadline article that she challenged were accurate or not defamatory. Scola denies the remaining allegations of Paragraph 45.

46.     Scola denies the allegations of Paragraph 46 as stated. Scola admits that she has publicly discussed her trademark enforcement efforts. Scola denies that she acted improperly in any respect.

47.     Scola denies the allegations of Paragraph 47.

48.     Scola admits that she received a letter from Plaintiff's counsel on or about November 20, 2025, to which she did not respond. Scola denies that the letter accurately characterized Plaintiff's rights or Scola's obligations. Scola denies the remaining allegations of Paragraph 48.

49.     Scola admits that she continued to pursue enforcement of her trademark rights and sent correspondence to Shopify regarding mybestjudy and its use of the LEXI LOVE mark. Scola denies the remaining allegations of Paragraph 49.

SCOLA'S ANSWER AND COUNTERCLAIMS

50.     Scola admits that she received correspondence from Plaintiff's counsel on or about December 8, 2025, to which she did not respond. Scola denies that the correspondence accurately characterized Scola's trademark rights, the validity and enforceability of Scola's registrations, or Scola's obligations. Scola denies the remaining allegations of Paragraph 50.

51.     Scola admits that she will continue to enforce her trademark rights through lawful means. Scola denies the remaining allegations of Paragraph 51.

52.     Paragraph 52 contains legal conclusions to which no response is required. To the extent a response is required, Scola denies the legal conclusions stated in Paragraph 52 and further denies the allegations contained therein.

53.     Scola lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 53, and on that basis denies them.

54.     Scola lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 54, and on that basis denies them.

55.     Paragraph 55 contains legal conclusions to which no response is required. To the extent a response is required, Scola denies the legal conclusions stated in Paragraph 55 and further denies the allegations contained therein.

56.     Paragraph 56 contains legal conclusions and requests for relief, to which no response is required. To the extent a response is required, Scola denies that Plaintiff is entitled to any declaratory or other relief sought, denies the legal conclusions stated in Paragraph 56 and further denies the allegations contained therein.

**ANSWER TO FIRST CAUSE OF ACTION**

57.     Scola incorporates by reference her responses to Paragraphs 1 through 56 as if fully set forth herein.

58.     Paragraph 58 contains legal conclusions, to which no response is required. To the extent a response is required, Scola denies the legal conclusions stated in Paragraph 58 and further denies the allegations contained therein.

59.     Scola denies the allegations of Paragraph 59.

60.     Scola denies the allegations of Paragraph 60.

SCOLA'S ANSWER AND COUNTERCLAIMS

61. Paragraph 61 contains legal conclusions and requests for relief, to which no response is required. To the extent a response is required, Scola denies that Plaintiff is entitled to any declaratory relief, denies the legal conclusions stated in Paragraph 61 and further denies the allegations contained therein.

## ANSWER TO SECOND CAUSE OF ACTION

62. Scola incorporates by reference her responses to Paragraphs 1 through 61 as if fully set forth herein.

63. Paragraph 63 contains legal conclusions, to which no response is required. To the extent a response is required, Scola denies the legal conclusions stated in Paragraph 63 and further denies the allegations contained therein.

64. Scola denies the allegations of Paragraph 64. Scola affirmatively states that it is Plaintiff's own continued unauthorized use of the LEXI LOVE mark—not any action by Scola—that is likely to cause consumer confusion by creating the false impression that Plaintiff and Scola are affiliated or that Plaintiff is the source of services under the mark.

65. Scola admits that there have been instances of consumer confusion between the parties. Scola denies that such confusion is attributable to Scola's lawful use of her own registered mark; any such confusion is the direct result of Plaintiff's unauthorized use of the LEXI LOVE mark. Scola denies the remaining allegations of Paragraph 65.

66. Paragraph 66 contains legal conclusions, to which no response is required. To the extent a response is required, Scola denies the legal conclusions stated in Paragraph 66 and further denies the allegations contained therein.

67. Paragraph 67 contains legal conclusions, to which no response is required. To the extent a response is required, Scola denies the legal conclusions stated in Paragraph 66 and further denies the allegations contained therein.

68. Scola denies the allegations of Paragraph 68.

69. Paragraph 69 contains legal conclusions and requests for relief, to which no response is required. To the extent a response is required, Scola denies that Plaintiff is entitled to any injunctive

SCOLA'S ANSWER AND COUNTERCLAIMS

or other relief, denies the legal conclusions stated in Paragraph 69 and further denies the allegations contained therein.

**ANSWER TO THIRD CAUSE OF ACTION**

70. Scola incorporates by reference her responses to Paragraphs 1 through 69 as if fully set forth herein.

71. Paragraph 71 contains legal conclusions, to which no response is required. To the extent a response is required, Scola denies the legal conclusions stated in Paragraph 71. Scola further denies all allegations contained in Paragraph 71.

72. Scola denies the allegations of Paragraph 72.

73. Paragraph 73 contains legal conclusions, to which no response is required. To the extent a response is required, Scola denies the legal conclusions stated in Paragraph 73. Scola further denies all allegations contained in Paragraph 73.

74. Paragraph 74 contains legal conclusions, to which no response is required. To the extent a response is required, Scola denies the legal conclusions stated in Paragraph 74. Scola further denies all allegations contained in Paragraph 74.

75. Paragraph 75 contains legal conclusions and requests for relief, to which no response is required. To the extent a response is required, Scola denies that Plaintiff is entitled to any of the relief requested and denies the legal conclusions stated in Paragraph 75.

**ANSWER TO FOURTH CAUSE OF ACTION**

76. Scola incorporates by reference her responses to Paragraphs 1 through 75 as if fully set forth herein.

77. Scola lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 77, and on that basis denies them.

78. Scola admits that she was generally aware Plaintiff was working as a performer under the LEXI LOVE name with third parties in the entertainment industry, but otherwise denies the allegations in Paragraph 78.

79. Scola denies the allegations in Paragraph 79.

80. Scola denies the allegations in Paragraph 80.

11

81.    Paragraph 81 contains legal conclusions, to which no response is required. To the extent a response is required, Scola denies the legal conclusions stated in Paragraph 81. Scola further denies all allegations contained in Paragraph 81.

### ANSWER TO FIFTH CAUSE OF ACTION

82.    Scola incorporates by reference her responses to Paragraphs 1 through 81 as if fully set forth herein.

83.    Scola lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 83, and on that basis denies them.

84.    Scola denies the allegations of Paragraph 84.

85.    Scola denies the allegations of Paragraph 85.

86.    Scola lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 86, and on that basis denies them.

The remainder of Plaintiff's Complaint constitutes Plaintiff's Prayer for Relief, to which no response is required. To the extent a response is required, Scola denies that Plaintiff is entitled to any of the relief sought. All allegations not specifically admitted are hereby denied.

### AFFIRMATIVE DEFENSES

Without prejudice to the denials and other responses set forth above, and without undertaking or shifting any burden of proof that properly rests with Plaintiff, Scola asserts the following Affirmative Defenses. Scola reserves the right to amend or supplement these defenses as additional information becomes available through discovery.

1.    **Failure to State a Claim.** Each cause of action in the Complaint fails to state a claim upon which relief can be granted. Plaintiff's declaratory judgment claims fail because Scola holds valid, senior trademark rights in the LEXI LOVE mark. Plaintiff's trademark infringement claim fails because Plaintiff has no trademark rights superior to Scola's. Plaintiff's California UCL claim fails because Scola's enforcement of a valid trademark does not constitute an unlawful, unfair, or fraudulent business practice. Plaintiff's intentional interference claims fail because Scola's enforcement of her trademark rights is legally protected conduct that cannot constitute improper interference as a matter of law.

2. **Priority and Senior Trademark Rights.** Plaintiff's claims are barred, in whole or in part, because Scola is the senior user and owner of the LEXI LOVE mark in relevant channels, with enforceable federal registration and common-law rights. Scola has continuously used the LEXI LOVE mark in connection with entertainment services since as early as August 16, 2004—approximately five years before Plaintiff's earliest alleged use in 2009. Because Scola's priority predates Plaintiff's use, Plaintiff cannot establish the superior rights necessary to support any of her claims.

3. **Validity and Enforceability of Federal Registration.** Plaintiff's claims are barred, in whole or in part, because Scola holds an active, valid federal trademark registration, U.S. Reg. No. 7,727,806, on the Principal Register for the LEXI LOVE mark, which constitutes prima facie evidence of the validity of the mark, the registration, Scola's ownership, and Scola's exclusive right to use the mark in connection with the registered services. As the holder of a valid federal registration, Scola is entitled to the statutory presumptions and protections of the Lanham Act, including constructive notice to all users as of the application filing date.

4. **Unclean Hands.** Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands. Plaintiff had actual or constructive notice of Scola's prior trademark rights when she adopted and continued to use the LEXI LOVE mark for commercial entertainment services. Scola held a federal trademark registration for entertainment services as early as 2008, and a WIPO decision confirming Scola's rights in the LEXI LOVE mark was publicly available by 2009. Plaintiff's knowing adoption and continued use of the LEXI LOVE mark in the face of Scola's senior adoption and continuing federal protection constitutes inequitable conduct that precludes Plaintiff from obtaining equitable relief.

5. **Estoppel**. Plaintiff's claims are barred, in whole or in part, by equitable estoppel. After receiving explicit notice of Scola's trademark rights and objections, Plaintiff continued to use "Lexi Love," and at times shifted to "Lexi from Drag Race," then resumed "Lexi Love," evidencing awareness and waiver of contrary positions and creating reliance by third parties and Scola. Scola informed *RuPaul's Drag Race*, MTV, and WOW of her trademark as early as December 2024 and sent cease-and-desist notices to MTV, WOW, and Barnes no later than August 2, 2025. At one point,

SCOLA'S ANSWER AND COUNTERCLAIMS

Plaintiff referred to herself as "Lexi from Drag Race," but recently resumed referring to herself as "Lexi Love" and directed others to do the same. Plaintiff should not be permitted to profit from her infringing expansion and then seek to strip Scola of the rights she has consistently asserted.

6.      **Laches.** Plaintiff's claims are barred, in whole or in part, by the doctrine of laches. Plaintiff had constructive notice of Scola's federal trademark rights as early as December 12, 2007, the application filing date of Scola's first registration. Plaintiff's failure to challenge the validity of Scola's rights until after her own commercial profile expanded dramatically demonstrates unreasonable delay that has prejudiced Scola.

7.      **No Abandonment.** Plaintiff's abandonment theory is barred as a matter of law. The cancellations of prior registrations for failure to file Section 8 declarations are procedural events that do not establish abandonment of the underlying common law trademark rights. Scola consistently maintained actual use of the LEXI LOVE mark throughout the relevant period and at all times intended to continue using the mark in commerce, as demonstrated by her repeated re-application and re-registration efforts and ongoing use of the name in connection with her professional activities.

8.      **First Amendment, Anti-SLAPP and Noerr-Pennington.** Scola's public statements regarding her trademark rights and Plaintiff's infringement are protected by the First Amendment to the U.S. Constitution and Article I of the California Constitution. Scola's communications with platforms, venues, and third parties asserting her trademark rights constitute petitioning activity protected by the Noerr-Pennington doctrine and California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16. Plaintiff's tort claims predicated on Scola's protected statements and petitioning activities are subject to a special motion to strike under California Code of Civil Procedure § 425.16.

9.      **Acquiescence.** To the extent evidence shows Plaintiff, after receiving notice, temporarily adopted "Lexi from Drag Race," such conduct demonstrates acquiescence to Scola's trademark rights and bars equitable relief against Scola's continued senior use.

10.      **Statute of Limitations**. Plaintiff's state-law claims are barred in whole or in part by applicable limitations. To the extent Plaintiff asserts time-barred tort theories or seeks retrospective relief beyond applicable limitation periods, such claims are barred in whole or in part. Scola expressly preserves all limitations defenses available under California and federal law.

SCOLA'S ANSWER AND COUNTERCLAIMS

11.     **No Damages or Causation and Failure to Mitigate.** Plaintiff has not suffered legally cognizable damages as a result of any action by Scola. Plaintiff's claimed damages, including lost bookings and removal of social media accounts, are the result of Plaintiff's own unauthorized use of Scola's mark and are not compensable. To the extent Plaintiff suffered any actual injury, that injury was caused by Plaintiff's own conduct or by non-parties. Any alleged confusion or harm is attributable to Plaintiff's own conduct and the decisions of third parties (including networks, platforms, and venues) outside Scola's control, breaking any causal chain as to Scola. To the extent any damages exist, Plaintiff failed to take reasonable steps to mitigate them.

12.     **Comparative Fault/Third-Party Conduct.** No conduct by or attributable to Scola was either the cause in fact or the proximate cause of the damages alleged by Plaintiff. Rather, the damages alleged by Plaintiff were caused, either in whole or in part, by Plaintiff's own acts or omissions or by the acts or omissions of persons or entities other than Scola. Plaintiffs' damages, if any, must be reduced in proportion to the fault attributable to those parties.

13.     **Plaintiff's Tortious Conduct and False Statements.** Plaintiff's claims are barred or reduced by Plaintiff's own tortious and inequitable conduct. Plaintiff has publicly made false and misleading statements about Scola's trademark rights and registration history, including falsely claiming to have offered Scola a licensing agreement that Scola failed to respond to.

14.     **Reservation of Additional Defenses**. Scola reserves the right to assert additional affirmative defenses that become apparent through discovery or otherwise, and to amend or supplement these defenses as additional information becomes available.

# COUNTERCLAIMS

## PRELIMINARY STATEMENT

1.    Counter-Plaintiff Selena Scola ("Scola") is a multi-disciplinary entertainer who has performed under the name "Lexi Love" for more than twenty years. Scola's use of the name is well-known and well-documented. Her career as Lexi Love began in 2004 in the adult entertainment industry where she became a household name. Her career eventually crossed over into the independent media world where Scola has landed roles in film, television, and commercials; released music and toured; and been recognized in the industry as a member of the Screen Actors Guild–American Federation of Television and Radio Artists (SAG-AFTRA).

2.    Scola owns the rights to LEXI LOVE. Scola earned these rights by creating a brand and a career that the entertainment industry identified as being associated with LEXI LOVE. She has maintained the rights to the name by continuously and without interruption using the name over a period of more than twenty years and in dozens of meaningful, thoughtfully chosen projects.

3.    Counter-Defendant Cody Barnes ("Barnes") is a drag queen who currently performs under the name Lexi Love in direct violation of Scola's trademark rights. Barnes alleges that she began using the name Lexi Love in 2009. Any such use, however, has been inconsistent at best. Barnes has left the industry for extended periods of time, during which she failed to use any stage name, let alone "Lexi Love." And even when she has been an active drag performer, Barnes has constantly changed and recycled stage names, spending years performing under names other than "Lexi Love." Indeed, as recently as 2021, Barnes was performing under a different name.

4.    In 2025, Barnes appeared on Season 17 of the popular reality television show *RuPaul's Drag Race* ("*Drag Race*") under the name Lexi Love. Barnes received widespread recognition and a significant following as a result of her time on the show. This recognition was at the expense of Scola. As Barnes's Lexi Love brand got stronger, Scola's weakened; the internet became more and more inundated with Barnes, and Scola's presence has been eclipsed.

5.    In an effort to preserve the name she has spent decades building and maintaining, Scola attempted to stop the infringement. She contacted Barnes and the companies responsible for

*Drag Race* – Third-Party Defendants Paramount Skydance Corporation ("Paramount") and World of Wonders Productions, Inc. ("WOW") – to inform them of her legal rights to LEXI LOVE.

6.     But nothing changed. Barnes, Paramount, and WOW continued to infringe on Scola's mark. At the same time, Barnes took advantage of her newfound influence and waged a public smear campaign against Scola. Barnes intentionally spread misinformation about the validity of Scola's mark, mocked her past and current career, and represented to her fans that she—not Scola—is the true Lexi Love. Barnes's efforts were successful. For the past year, Scola has faced over a year of devastating online attacks at the hands of Barnes's fans. She fields daily attacks on her personal and professional character and her career; has been called "irrelevant flop ass," "stupid b*tch," "hoe," "transphobic c*nt,"; has received death threats and been told "F*ck you stupid b*tch, kill your mother fukc3r self"—all because Barnes believes that she is entitled to property that is not hers.

7.     The infringement by Barnes, Paramount, and WOW have caused and continue to cause Scola irreparable harm. In addition to the personal and emotional harm that she suffers daily, Scola faces ongoing harm to her trademark. Scola is suffering loss of business, business opportunities, and merchandising/sale opportunities; harm to her reputation and goodwill; and loss of her ability to promote, market, and advertise her services and to otherwise profit from her professional reputation and goodwill that she has painstakingly built over the past twenty two years.

8.     Scola seeks a judgment finding, among other things, that Barnes is infringing on Scola's trademark rights by performing under LEXI LOVE and that Paramount and WOW have contributed to Barnes's infringement by advertising and providing a platform to showcase her infringement. Scola also seeks injunctive relief prohibiting Barnes, Paramount, and WOW from continuing their infringing conduct.

## PARTIES

9.     Counter-Plaintiff Selena Scola is an individual living in San Francisco, California. She is a multi-disciplinary entertainer who has been professionally known as "Lexi Love" since 2004.

10.     Counter-Defendant Cody Barnes is an individual residing in Covington, Kentucky. ECF 1 at ¶ 6. Barnes describes herself as "a professional drag performer and entertainer who is professionally known as 'Lexi Love.'" *Id.*

SCOLA'S ANSWER AND COUNTERCLAIMS

11. Third-Party Defendant Paramount Skydance Corporation ("Paramount") is a Delaware corporation headquartered in Los Angeles, California. Paramount is a mass media and entertainment conglomerate that airs and streams *Drag Race*.

12. Third-Party Defendant World of Wonder Production Inc. ("WOW") is a California corporation that is, on information and belief, headquartered in Los Angeles, California. WOW produces *Drag Race* and streams the show and related content.

## JURISDICTION AND VENUE

13. This action rises under the Trademark Act of 1946, the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, and particularly Sections 32, 34, 35, and 43(a) of the Act (15 U.S.C. §§ 1114, 1116, 1117, and 1125(a)).

14. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

15. This Court has personal jurisdiction over Barnes because she has availed herself of the privileges and protections of California by filing suit against Scola rights for rights to the trademark that forms the basis for Scola's claims against Barnes. Additionally, Barnes has directed commercial activities, as Lexi Love, to the State.

16. This Court has personal jurisdiction over Paramount and WOW because, on information and belief, they are citizens of California. Additionally, Paramount and WOW have availed themselves of the privileges and protections of California by directing materials of Barnes as Lexi Love at the State.

17. Venue is proper in this District because a substantial part of the events or omissions giving rise to Scola's claims occurred here.

## SCOLA'S LONGSTANDING USE OF LEXI LOVE

18. Scola is a multi-disciplinary performer who has worked professionally under the name "Lexi Love" for more than twenty years. Scola's career began in 2004 in adult entertainment, where she became one of the most well-recognized talents in the industry.

SCOLA'S ANSWER AND COUNTERCLAIMS

19.    Between 2004 and 2010, Scola starred in over 600 adult films produced by industry names such as Adam and Eve, Brazzers, Elegant Angel, Evil Angel, Naughty America, Playboy, Penthouse, Wicked, and Vivid.

20.    Scola was frequently hired for industry work outside of films. She was hired to promote companies at industry expositions and performed as a feature dancer at night clubs across the country. Scola was a frequent attendee at red carpets, award shows, and conventions; guest-starred on dozens of radio talk shows; and was reviewed hundreds of times by the Adult Video Network ("AVN")—the industry's only newspaper at the time. In 2006 and 2008, Scola was asked to participate in the Skylar Neil Memorial Golf Tournament, hosted by Vince Neil of Motley Crue, as an incentive for golfers to participate in the tournament.

21.    Scola was a beloved actor in the adult entertainment industry and beyond. She frequently received fan mail, was a frequent topic of conversation on industry chat boards, and was recognized in public on countless occasions—including during an interview for a restaurant position that she had applied for under her legal name.

22.    In or around 2009, Scola became a fierce advocate for safe sex in the adult entertainment industry. Scola's advocacy on the issue was widely known. Scola ultimately refused to film adult content without protection, and when this prevented her from being cast for roles, she retired from making adult films.

23.    Scola remained an active part of the adult entertainment world until 2013, however. Between 2010 and 2013, she continued her work as a feature dancer and began working as a consultant on films and other projects in the industry. She likewise remained an active attendee at industry events, appeared on radio shows, and continued to be a constant topic on chat boards and in AVN publications.

24.    At the same time, Scola began expanding her talents into independent media. For the past fifteen years, Scola has maintained a carefully curated career by working on small and large budget projects from which she derives meaning and passion. Since 2010, Scola has performed in, among other things: *Look* in 2010, *Director's Cut* in 2013, *KillCast* in 2014, *Diminuendo* in 2016, and *Jexi* in 2019.

SCOLA'S ANSWER AND COUNTERCLAIMS

25. In 2015, Scola became a member of SAG-AFTRA as Lexi Love. In 2018, *Diminuendo* and *Director's Cut* were released, and AVN published a piece about the premiere of *Director's Cut*, noting Scola as Lexi Love's role in the film. Between 2020 and 2023, even in the midst of industry-wide shut-downs for COVID-19 and the 2023 Writers Guild strikes and serious health issues, Scola maintained her mark through a strong social media presence. At this point, X (formerly Twitter) had approved Scola's Lexi Love accounts for monetization, and Scola was posting content in an effort to generate revenue and maintain her following. Between 2024 and 2025, Scola produced and released an album and acted in a Super Bowl LX commercial, which aired in February 2026.

26. On February 10, 2024, Scola filed an application to federally register the LEXI LOVE mark, and the registration was granted on March 18, 2025. The federal registration is currently active.

27. Scola's federal registration grants her exclusive ownership to the LEXI LOVE mark beginning on February 10, 2024.

28. Scola's audiences recognized her work as that of LEXI LOVE such that the mark acquired a secondary meaning and conferred on her common law trademark rights between 2004 and 2009.

29. Since then, Scola has maintained continuous use of the mark in commerce and has always intended to continue using her mark.

### THE INFRINGING CONDUCT

30. Barnes is a drag performer who performs under the name Lexi Love.

31. Barnes's use of the name Lexi Love has been inconsistent and noncontinuous. Since 2009, Barnes has frequently changed her drag name, performing under, to name a few, Alexa Love (which she performed as in 2009, 2010, and 2013), Alexstacy Love, Lexi DVV Love, and Lexi V. Love (under which she performed as recently as 2021). Barnes has publicly stated that she "couldn't stop or help [her]self" from constantly changing and recycling drag names and that she did not return to using "Lexi Love" until "right before [*Drag Race*]." Maddy Morphosis, *Lexi Give It To Me Straight Ep 72* 12:23–12:57, YOUTUBE (Oct. 9, 2025), https://www.youtube.com/watch?v=mkRQ53I0Hfk&t=696s.

SCOLA'S ANSWER AND COUNTERCLAIMS

32. On December 4, 2024, Barnes—who had by then apparently changed her stage name back to Lexi Love—was announced as a contestant on Season 17 of *Drag Race*. *Drag Race* is a popular reality television show on which drag performers compete for the title of "America's Next Drag Superstar."

33. Prior to December 4, 2024, Scola had never heard of Barnes and was unaware that another individual was performing under her LEXI LOVE mark.

34. The same day, Scola contacted Paramount (through MTV) and WOW on social media to notify them of her rights to LEXI LOVE.

35. Neither party responded.

36. *Drag Race* aired from January 3, 2025, through April 18, 2025. Barnes appeared in each episode, making it to the final four contestants and the season finale. In each episode, Barnes performs as Lexi Love.

37. Every week from January 3, 2025, to April 18, 2025, Paramount aired *Drag Race* on MTV, broadcasting the infringement to millions of fans each week. It contemporaneously made the entire season streamable on its streaming platform, Paramount+. WOW produced *Drag Race* and also made the entire season and related *Drag Race* content streamable on its streaming platform, WOW Presents Plus. The season remains available to stream on both platforms, allowing daily infringement by millions of fans across the globe. Additionally, Paramount and WOW have both further contributed to the infringement by posting content to their social media profiles identifying Barnes as Lexi Love.

38. As a result of the show, Barnes gained an enormous following and saw a significant increase in popularity. Her social media following increased by nearly 1,475%; she became a frequent guest on podcasts, YouTube channels, and *Drag Race* spin-off television content; and she has recently been featured in a television mini-series produced by WOW and aired on HBO.

39. As Barnes's mark grew, Scola's began to fade. Search engines operate by showing users the content that they think the user wants to see. This means that searches for "Lexi Love" are more likely to show results for Barnes—due to her association with a global show like *Drag Race* and her millions of social media followers—compared to Scola.

40. This is precisely what happened during and following *Drag Race*. Where internet searches would once reveal results for Scola, they now show only results for Barnes. Scola, who has long used the internet name (or handle) @LexiLove, began to be tagged repeatedly on social media by other social media users who intended to tag Barnes. As a result, what little internet presence Scola was able to maintain has been diluted by references to and content for *Drag Race* and Barnes as Lexi Love.

41. In August 2025, as soon as Scola realized the impact Barnes's newfound fame was having on her mark, Scola resumed her enforcement efforts. On August 1, 2025, Scola tagged Barnes, Paramount, and WOW in a social media post, once again informing them of her rights to LEXI LOVE and demanding that they stop all use of the mark. Scola sent separate cease-and-desist letters to Barnes and WOW by email on August 2, 2025.

42. Despite her outreach, the infringement continued. Other than a brief period during which she went by "Lexi from Drag Race,"—changing her name again—Barnes has continued working professionally under LEXI LOVE, including in her interactions with fans, posts on social media, and performances.

43. Paramount and WOW's infringement have also continued. Both companies continue to make Season 17 of *Drag Race* streamable on their respective streaming services and to post content on social media identifying Barnes as Lexi Love. WOW has produced and streamed additional video content of Barnes as Lexi Love since *Drag Race* Season 17 finished airing and held expos and events at clubs, creating an entire franchise around Barnes.

44. This conduct has caused and continues to cause economic harm to Scola. It has also completely eviscerated the value that she spent decades building in the LEXI LOVE brand and irreparably damaged her goodwill and reputation.

45. Scola is the legal owner of LEXI LOVE. Her use predates Barnes's, has been continuous, and has afforded her a valid and protectable mark. This mark is federally registered. Yet, Barnes, Paramount, and WOW have refused to recognize these rights. Barnes has shown a complete and total disregard for the career Scola has built and a determination to continue taking what legally

SCOLA'S ANSWER AND COUNTERCLAIMS

belongs to Scola. Paramount and WOW have shown a willingness to help her. Their conduct makes one thing clear: they have no intention of stopping their illegal activity absent judicial intervention.

## FIRST CLAIM – DIRECT TRADEMARK INFRINGEMENT AGAINST BARNES (15 U.S.C. § 1125(a))

46. Scola incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

47. Scola owns a valid and enforceable trademark to LEXI LOVE in connection with, among other things, entertainment services.

48. Scola's continuous and uninterrupted use extends back to 2004. Between 2004 and 2009, the adult entertainment industry came to associate Scola's work with LEXI LOVE, and the mark acquired a secondary meaning. Scola has used LEXI LOVE in commerce continuously and without interruption since 2004.

49. Barnes's blatant and unauthorized use of LEXI LOVE is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Scola's services and is likely to cause consumers to believe that Scola's services are related to or affiliated with Barnes's. Indeed, over 200 platforms and consumers have already believed Scola to be Barnes.

50. Barnes's conduct constitutes trademark infringement and unfair competition in violation of 15 U.S.C. § 1125(a).

51. Barnes's infringement is causing immediate and irreparable harm to Scola. Her intellectual property is rapidly losing strength, she is losing economic opportunity, and her goodwill and reputation are being eroded by the public's association of Scola's brand with Barnes's. Scola has suffered and will continue to suffer lost revenue, lost opportunities, corrective expenses because of Barnes's conduct.

52. Scola is entitled to injunctive relief, actual damages, Barnes's profits, treble damages and profits, costs and attorney's fees as allowed under the Lanham Act, and any other relief this Court deems proper.

///

SCOLA'S ANSWER AND COUNTERCLAIMS

**SECOND CLAIM – CONVERSION AGAINST BARNES**

53.    Scola incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

54.    Barnes has and continues to convert Scola's property through her unauthorized use of LEXI LOVE. Scola is the legal owner of LEXI LOVE. Despite her valid claim to the mark, Barnes continues to use the mark in commerce without authorization and indeed in the face of direct protests by Scola.

55.    As a result of Barnes's unauthorized use of the mark, Scola has suffered actual economic harm, lost business opportunities, reputational harm and loss of goodwill, and pain and suffering.

56.    Scola seeks economic and non-economic actual damages, injunctive relief, and any other relief this Court deems proper.

**THIRD CLAIM – UNFAIR COMPETITION AGAINST BARNES, PARAMOUNT AND WOW (Cal. Bus. Prof. Code § 17200)**

57.    Scola incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

58.    California's Unfair Competition Law, Cal. Bus. & Prof Code§ 17200, et seq. (the "UCL"), prohibits any "unlawful, unfair or fraudulent business act or practice .... "

59.    Barnes, Paramount and WOW have engaged in unfair business acts in violation of California Business and Professions Code §§ 17200 *et seq.* by, among other things, taking and using for their own advantage LEXI LOVE—a trademark to which Scola, not Barnes, has the legal right to use. Barnes's trademark infringement constitutes an unlawful and unfair business act or practice in contravention of California law. Paramount and WOW's contributory infringement, with prior knowledge of Scola's common law first use rights, constitutes an unlawful and unfair business act or practice in contravention of California law.

60.    Barnes, Paramount, and WOW's conduct was intended to cause harm and did actually cause harm to Scola by, among other things, weakening Scola's name and brand, costing her actual monetary loss, and severely impacting her goodwill and harming her business relations and

professional reputation. These unfair and unlawful acts by the counter-defendants were done intentionally, and/or with reckless disregard of Scola's rights, and in violation of 15 U.S.C. §§ 1125(a).

61. The "unlawful" prong of the UCL treats violations of other federal, state, regulatory, or court-made law as unlawful business practices independently actionable under state law.

62. The "unlawful" practices alleged above are continuing in nature as Barnes, Paramount, and WOW continue to market and promote Barnes utilizing Scola's mark throughout television broadcast media, and on streaming platforms.

63. As a direct and proximate result of Counter-Defendants' conduct and their willful violations of the UCL, Scola has lost money and suffered harm and therefore has standing under Bus. & Prof. Code § 17204 to seek both monetary and injunctive relief.

64. Pursuant to § 17203 of the UCL, Scola seeks (a) restitution of all monies received by Counter-Defendants as a result of the infringement of Scola's Mark; (b) the disgorgement of all other benefits and ill-gotten gains obtained by Counter-Defendants as a result of their conduct in violation of the UCL; and (c) order from this Court enjoining Defendants from continuing to infringe on Scola's Mark, and from continuing to engage in the acts as set forth in this Complaint, which acts constitute violations of the UCL.

65. Scola seeks restitution, injunctive relief, disgorgement of wrongfully recovered gains, and any other relief the Court deems proper.

**FOURTH CLAIM – CONTRIBUTORY TRADEMARK INFRINGEMENT AGAINST PARAMOUNT AND WOW (15 U.S.C. § 1125(a))**

66. Scola incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth therein.

67. Scola owns a valid and enforceable trademark to LEXI LOVE in connection with, among other things, entertainment services.

68. Scola's continuous and uninterrupted use extends back to 2004. Between 2004 and 2009, the adult entertainment industry came to associate Scola's work with LEXI LOVE, and the

SCOLA'S ANSWER AND COUNTERCLAIMS

mark acquired a secondary meaning. Scola has used LEXI LOVE in commerce continuously and without interruption since 2004.

69. Despite Scola's rights, Paramount and WOW have significantly contributed to Barnes's infringement of Scola's mark. Paramount has aired, streamed, and posted content identifying Barnes as Lexi Love. WOW has likewise produced, streamed, and posted content identifying Barnes as Lexi Love. Both parties contributed to Barnes's infringement by helping her regain access to her social media accounts.

70. Paramount and WOW have contributorily infringed on Scola's trademark in violation of 15 U.S.C. § 1125(a).

71. Paramount and WOW's infringement is causing immediate and irreparable harm to Scola. Her intellectual property is rapidly losing strength, she is losing economic opportunity, and her goodwill and reputation are being eroded by the public's association of Scola's brand with Barnes's. Scola has suffered and will continue to suffer lost revenue, lost opportunities, corrective expenses because of Barnes's conduct.

72. Scola is entitled to injunctive relief, actual damages, Barnes's profits, treble damages and profits, costs and attorney's fees as allowed under the Lanham Act, and any other relief that this Court deems proper.

## PRAYER FOR RELIEF

Scola respectfully requests that the Court:

73. Dismiss the Complaint in its entirety with prejudice and enter judgment in favor of Scola on all counts;

74. Declare that U.S. Trademark Registration No. 7,727,806 is valid and enforceable;

75. Declare that Scola is the senior user and owner of LEXI LOVE in connection with entertainment services;

76. Declare that Barnes's use of LEXI LOVE constitutes infringement of Scola's federally registered trademark and common law trademark rights in violation of Section 43(a) of the Lanham Act;

SCOLA'S ANSWER AND COUNTERCLAIMS

77. Declare that Barnes's unauthorized use of LEXI LOVE constitutes conversion and unfair business practices under California state law;

78. Declare that Paramount contributed to Barnes's infringement in violation of Section 43(a) of the Lanham Act;

79. Declare that WOW contributed to Barnes's infringement in violation of Section 43(a) of the Lanham Act;

80. Temporarily and permanently enjoin Barnes from using LEXI LOVE or any confusingly similar mark in connection with entertainment services;

81. Temporarily and permanently enjoin Paramount and WOW from assisting or contributing to Barnes's use of LEXI LOVE or any confusingly similar mark in connection with entertainment services;

82. Award Scola costs of suit and three times the amount of actual damages in accordance with 15 U.S.C. § 1117(a);

83. Award Scola disgorgement of any profits realized by Barnes's wrongful acts in accordance with Cal. Bus. Prof. Code § 17200 *et seq.* or the wrongful acts of Barnes, Paramount, and/or WOW in accordance with 15 U.S.C. § 1117(a).

84. Award Scola damages for pain and suffering;

85. Award Scola all pre-judgment and post-judgment interest as permitted by law; and

86. Award Scola such other and further relief as the Court deems just and proper.

**REQUEST FOR JURY TRIAL**

Scola respectfully requests trial by jury.

Respectfully submitted,

WINTHROP LAW GROUP, P.C.

Dated: March 08, 2026          */s/ Reid A. Winthrop*

Reid A. Winthrop
Attorneys for Selena Scola

SCOLA'S ANSWER AND COUNTERCLAIMS