DAVID GROSSMAN (SBN 211326)
dgrossman@loeb.com
JENNIFER G. KAHN (SBN 336445)
jkahn@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

Attorneys for Counter-Defendants
PARAMOUNT SKYDANCE CORPORATION and
WORLD OF WONDER PRODUCTIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CODY BARNES, professionally known as LEXI LOVE,<br><br>    Plaintiff,<br><br>    v.<br><br>SELENA SCOLA,<br><br>    Defendant.<br>―――――――――――――<br>SELENA SCOLA, aka LEXI LOVE,<br><br>    Counter-Claimant<br><br>    v.<br><br>CODY BARNES, an individual; PARAMOUNT SKYDANCE CORPORATION, a Delaware corporation; and WORLD OF WONDER PRODUCTIONS, INC., a California corporation<br><br>    Counter-Defendants. | Case No.: 3:25-cv-10837-RS<br><br>Judge: Honorable Richard Seeborg<br><br>**COUNTER-DEFENDANTS PARAMOUNT SKYDANCE CORPORATION AND WORLD OF WONDER PRODUCTIONS, INC. OPPOSITION TO COUNTER-CLAIMANT'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>[*Declaration of David Grossman; Request for Judicial Notice filed concurrently herewith*]<br><br>Date:        April 16, 2026<br>Time:        1:30 p.m.<br>Courtroom: 3 – 17th Floor<br><br>Complaint filed:    December 19, 2025<br>Counterclaim filed:  March 9, 2026 |

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................8

FACTUAL BACKGROUND.........................................................................................9

LEGAL STANDARD ................................................................................................. 13

DISCUSSION ............................................................................................................. 13

I.      Scola Cannot Demonstrate Irreparable Harm.................................................. 13

II.     Scola Cannot Show A Likelihood Of Success On Her Infringement Claim Against Counter-Defendants Because Scola's Claim Violates The First Amendment And Fails The *Rogers* Test ............................................................. 17

        A.      Scola's Infringement Claim Fails Under The *Rogers* Test ........................ 17

                1.      Counter-Defendants' Purported Use of The Lexi Love Mark Is In Connection With An Expressive Work.................................. 17

                        a.      Scola Fails To Establish That Counter-Defendants' Use Of The Lexi Love Mark Had No Artistic Relevance. ................................................................. 19

                        b.      Scola Fails To Demonstrate That Counter-Defendants Explicitly Mislead Consumers About The Source Or Content Of *Drag Race*............................................. 20

                        c.      Counter-Defendants Do Not Use The Lexi Love Mark As A Source Identifier And Therefore The *Rogers* Test Applies. ............................................... 21

III.    Scola Cannot Establish A Likelihood Of Success On Her Infringement Claim Against Counter-Defendants For The Additional Reason That Her Direct Trademark Infringement Claim Against Barnes Fails ............................... 23

        A.      Scola Cannot Show A Likelihood Of Success On Her Direct Trademark Infringement Claim Against Barnes Because She Made Intentional Misrepresentations In Order To Secure Her Only Active Registration....................................................................................... 23

        B.      Scola Cannot Establish A Likelihood Of Success On Her Direct Trademark Infringement Claim Because Barnes' Use Of The Lexi Love Mark In Connection With Entertainment Services Predated Scola's Use ............................................................................................. 25

IV.     Scola Cannot Establish A Likelihood Of Success On Her Unfair Competition Claim Against Counter-Defendants ................................................. 26

V.      The Balance Of Equities Strongly Favors Counter-Defendants .......................... 26

VI.     The Public Interest Weighs Against Issuing An Injunction ................................. 27

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 3:25-CV-10837-RS

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

CONCLUSION..................................................................................................................................28

OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:25-CV-10837-RS

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adir Int'l, LLC v. Unicomer S.A. de C.V.*,
2007 U.S. Dist. LEXIS 119486 (C.D. Cal. Nov. 19, 2007)........................................ 15

*Applied Info. Scis. Corp. v. eBay, Inc.*,
511 F.3d 966 (9th Cir. 2007).................................................................................. 23

*Baskin v. Royal Goode Prods. LLC*,
2021 U.S. Dist. LEXIS 248510 (M.D. Fla. Nov. 19, 2021) ..................................... 28

*In re Bose Corp.*,
580 F.3d 1240 (Fed. Cir. 2009)............................................................................... 23

*CI Games S.A. v. Destination Films*,
2016 U.S. Dist. LEXIS 189118 (C.D. Cal. Oct. 25, 2016)........................................ 19

*Claybrooks v. ABC, Inc.*,
898 F. Supp. 2d 986 (M.D. Tenn. 2012) ................................................................. 18

*DC Labs Inc. v. Celebrity Signatures Int'l, Inc.*,
2013 U.S. Dist. LEXIS 110752 (S.D. Cal. Aug. 6, 2013) ......................................... 23

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*,
547 F.3d 1095 (9th Cir. 2008).......................................................................... 19, 20

*Edge Games, Inc. v. Elec. Arts, Inc.*,
745 F. Supp. 2d 1101 (N.D. Cal. 2010) .................................................................. 16

*Elements Spirits, Inc. v. Iconic Brands, Inc.*,
2015 U.S. Dist. LEXIS 75986 (C.D. Cal. June 11, 2015) ......................................... 28

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) (en banc)............................................................. 27, 28

*Good Meat Project v. Good Meat, Inc.*,
716 F. Supp. 3d 783 (N.D. Cal. 2024) .................................................................... 15

*Green v. Miss USA, LLC*,
52 F.4th 773 (9th Cir. 2022) .................................................................................. 18

*Haas Automation, Inc. v. Steiner*,
750 F. Supp. 3d 1107 (C.D. Cal. 2024) .................................................................. 22

*Hara v. Netflix, Inc.*,
146 F.4th 872 (9th Cir. 2025) ............................................................... 17, 20, 21, 22

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*,
736 F.3d 1239 (9th Cir. 2013).............................................................................. 13

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

*Imperial Sovereign Ct. v. Knudsen*,
  2026 U.S. App. LEXIS 7480 (9th Cir. Mar. 13, 2026)................................................. 18

*Jack Daniel's Props. v. VIP Prods., LLC*,
  599 U.S. 140 (2023) .................................................................................................... 21

*Javo Bev. Co. v. Cal. Extraction Ventures, Inc.*,
  2020 U.S. Dist. LEXIS 31167 (S.D. Cal. Feb. 24, 2020) ............................................ 15

*JTH Tax LLC v. AMC Networks Inc.*,
  694 F. Supp. 3d 315 (S.D.N.Y. 2023)......................................................................... 22

*Kahala Franchising, LLC v. Real Faith, LLC*,
  2022 U.S. Dist. LEXIS 91420 (C.D. Cal. May 20, 2022) ..................................... 13, 14

*In re King World Prods., Inc.*,
  898 F.2d 56 (6th Cir. 1990)......................................................................................... 28

*La Carniceria Meat Mkt. Grp. v. Carniceria Prime Meat Mkt. LLC*,
  2025 U.S. Dist. LEXIS 141965 (C.D. Cal. June 13, 2025) ......................................... 26

*Lamps Plus, Inc. v. Lamps Pro, LLC*,
  2024 U.S. Dist. LEXIS 192790 (C.D. Cal. Oct. 23, 2024) .......................................... 13

*Lost Int'l, LLC v. Germanotta*,
  2025 U.S. Dist. LEXIS 271706 (C.D. Cal. Dec. 15, 2025) .................................... 17, 21

*Lydo Enters. v. Las Vegas*,
  745 F.2d 1211 (9th Cir. 1984)..................................................................................... 14

*Masangsoft Inc. v. Azua*,
  2025 U.S. Dist. LEXIS 216447 (C.D. Cal. Aug. 27, 2025).......................................... 27

*Mattel, Inc. v. MCA Records*,
  296 F.3d 894 (9th Cir. 2002)....................................................................................... 20

*Metromedia Broad. Corp. v. MGM/UA Ent. Co.*,
  611 F. Supp. 415 (C.D. Cal. 1985) .............................................................................. 15

*Miller v. Cal. Pac. Med. Ctr.*,
  991 F.2d 536 (9th Cir. 2001).................................................................................. 15, 16

*Moore v. Hadestown Broadway LLC*,
  722 F. Supp. 3d 229 (S.D.N.Y. 2024).......................................................................... 18

*Napear v. Bonneville Int'l Corp.*,
  2025 U.S. Dist. LEXIS 61375 (E.D. Cal. Mar. 31, 2025) ........................................... 18

*Novalogic, Inc. v. Activision Blizzard*,
  41 F. Supp. 3d 885 (C.D. Cal. 2013) ........................................................................... 20

*Oakland Trib., Inc. v. Chronicle Publ'g Co.*,
  762 F.2d 1374 (9th Cir. 1985)................................................................................ 15, 16

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:25-CV-10837-RS

5

*Oren Enters. v. Stefanie Cove & Co.*,
  2017 U.S. Dist. LEXIS 228400 (C.D. Cal. June 2, 2017) ........................................... 15

*Pepperdine Univ. v. Netflix, Inc.*,
  2025 U.S. Dist. LEXIS 36920 (C.D. Cal. Feb. 26, 2025)...................................... 21, 22

*Petroliam Nasional Berhad v. GoDaddy.com, Inc.*,
  897 F. Supp. 2d 856 (N.D. Cal. 2012) ........................................................................ 23

*Playboy Enters. v. Netscape Commc'ns. Corp.*,
  55 F. Supp. 2d 1070 (C.D. Cal. 1999) ........................................................................ 15

*Playmakers, LLC v. ESPN, Inc.*,
  297 F. Supp. 2d 1277 (W.D. Wash. 2003)................................................................... 27

*Real USFL, LLC v. Fox Sports, Inc.*,
  2022 U.S. Dist. LEXIS 72857 (C.D. Cal. Apr. 14, 2022) ..................................... 15, 16

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989)........................................................................................ 18

*Segal v. Segel*,
  2022 U.S. Dist. LEXIS 11832 (S.D. Cal. Jan. 21, 2022)............................................. 19

*Spiraledge, Inc. v. SeaWorld Ent., Inc.*,
  2013 U.S. Dist. LEXIS 96616 (S.D. Cal. July 9, 2013) .............................................. 15

*Spolar v. Discovery Commc'ns, LLC*,
  2020 U.S. Dist. LEXIS 247006 (C.D. Cal. Oct. 2, 2020) ...................................... 27, 28

*Stewart Surfboards, Inc. v. Disney Book Grp., LLC*,
  2011 U.S. Dist. LEXIS 155444 (C.D. Cal. May 11, 2011) ......................................... 19

*Twentieth Century Fox TV v. Empire Distrib., Inc.*,
  875 F.3d 1192 (9th Cir. 2017)......................................................................... 18, 19, 20

*Winter v. NRDC, Inc.*,
  555 U.S. 7 (2008) ........................................................................................................ 13

*Yuga Labs, Inc. v. Ripps*,
  144 F.4th 1137 (9th Cir. 2025) ................................................................................... 21

*Zamfir v. Casperlabs, LLC*,
  528 F. Supp. 3d 1136 (S.D. Cal. 2021) ....................................................................... 27

**Constitutions**

U.S. Const. amend. I....................................................................................................*passim*

**Statutes**

15 U.S.C. § 1058.............................................................................................................. 11

15 U.S.C. § 1115(b).......................................................................................................... 25

OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:25-CV-10837-RS

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

15 U.S.C. § 1116(a) ................................................................................................................. 13

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:25-CV-10837-RS

Counter-Defendants Paramount Skydance Corporation ("Paramount") and World of Wonder Productions, Inc. ("WOW" together with Paramount, the "Counter-Defendants") file this memorandum in opposition to Counter-Claimant Selena Scola, aka LEXI LOVE's ("Scola") Motion for Preliminary Injunction (the "Motion"). The undisputed facts and admissions from Scola demonstrate that Scola has no basis for the requested preliminary injunction. Thus, the Motion must be denied.

## INTRODUCTION

Well over a year after Scola admitted to first learning of Plaintiff and Counter-Defendant Cody Barnes' ("Barnes") use of the Lexi Love name, Scola brought a Counterclaim against Barnes and Counter-Defendants claiming that Barnes' use of the Lexi Love mark infringed on her trademark and that Counter-Defendants contributed to the infringement by continuing to stream and promote *RuPaul's Drag Race* ("*Drag Race*") on their streaming platforms. Scola did not seek injunctive relief in 2024 or even in 2025. In fact, Scola did not even initiate this lawsuit. Barnes filed this action to obtain a declaration that Scola's claims were meritless and then, four months after the lawsuit was filed, and after receiving multiple extensions of time to respond to the December 2025 Complaint, Scola filed the present Motion. Scola's claims were not pressing enough for her to seek injunctive relief in 2024 when she was first on notice of them, they were not urgent enough for her to initiate a lawsuit and, even after she was sued by Barnes, Scola did not file the present request for injunctive relief until March of 2026. Her request for preliminary injunctive relief should be denied solely based on the extraordinary delay before she sought such relief from the Court.

Further, putting aside the disqualifying fact of her delay, there is absolutely no justification for an injunction seeking a prior restraint of the continued publication and streaming of Season 17 of *Drag Race*. None of the *Winter* requirements for granting a preliminary injunction come close to favoring Scola.

First, Scola cannot succeed on the merits of either her contributory trademark infringement claim or her unfair competition claim against Counter-Defendants because her

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

8

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 3:25-CV-10837-RS

claims cannot overcome Counter-Defendants' First Amendment rights. A trademark owner cannot enjoin an expressive work (here, the long-running series *Drag Race*) that incorporates an allegedly similar name or mark unless the use of the name or mark: (1) is not artistically relevant to the work; or (2) explicitly misleads consumers as to the source of the work. Scola cannot prove the existence of either of these exclusions and her request for injunctive relief must be denied.

Second, the balance of equities weighs against granting the injunction because: Scola cannot establish a likelihood of success on the merits of her claims; the delay in bringing the Motion shows that immediate relief is not necessary; and important First Amendment concerns militate against granting injunctive relief against creative works.

Finally, because the requested injunction constitutes a prior restraint on free speech, the public interest strongly weighs against issuing an injunction. Given Scola's failure to satisfy any of the *Winter* factors, and the fact that this case is at its inception and involves two factually-competing claims for the use of a stage name, the drastic remedy of a preliminary injunction enjoining free speech is not warranted here.

## FACTUAL BACKGROUND

Barnes is a drag performer who has used the drag name Lexi Love since 2009 in connection with live performances, in-person and televised appearances, online promotional content, other social media engagement activities, and related merchandise and branding. Dkt. 1 ¶¶ 1, 13. On December 4, 2024, Barnes, as Lexi Love, was announced as a contestant on the upcoming Season 17 of *Drag Race*, a reality television show where drag performers compete for the title of "America's Next Drag Superstar." Dkt. 19 ¶ 32.[1] *Drag Race* aired from January 3, 2025 through April 18, 2025, with Barnes, as Lexi Love, appearing in every episode. *Id.* ¶ 36. Paramount aired Season 17 of *Drag Race* on MTV and has made the entire season available to stream on its Paramount Plus platform. *Id.* ¶ 37. WOW produced

---

[1] Unless otherwise stated, references to paragraphs contained in Dkt. 19 refer to the portion of the document reflecting the Counterclaim, which begins on page 16 and continues until page 27.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

9

OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:25-CV-10837-RS

Season 17 of *Drag Race* and has made the entire season available to stream on its streaming platform, WOW Presents Plus. *Id.*

In 2004, Scola began her career working in adult films under the name, Lexi Love. Dkt. 24, p. 9. Scola admits that she stopped performing in adult films in 2010. *Id.* p. 8.[2] Scola does not allege that she "licensed" her name to those adult film companies when they cast her in their productions. Scola also does not allege or explain how those adult film producers can continue to use her supposedly-trademarked name without such a license.

After 2010, Scola claims that she began seeking roles in "independent media projects." Dkt. 24-1 ¶ 12. In 2015, Scola joined the Screen Actors Guild-American Federal of Television and Radio Artists ("SAG-AFTRA") under the name Lexi Love. *Id.* ¶ 14.

On December 12, 2007, Scola applied for a trademark with the United States Patent and Trademark Office ("USPTO") for the trademark Lexi Love. *See* Declaration of David Grossman ("Grossman Decl."), Ex. 2. On July 29, 2008, Scola obtained Registration Number 3475773 (the "2008 Registration") for the following services: "entertainment services, namely, providing a website featuring photographic, audio, video and prose presentations featuring adult content; entertainment services, namely, live televised and movie appearances by a professional entertainer; entertainment services, namely, personal appearances by a adult film star" in International Class 41. Dkt. 25, p. 4. The 2008 Registration was cancelled on March 6, 2015 because Scola failed to file the required Section 8 maintenance filings. Grossman Decl., Ex. 2.[3]

---

[2] Scola only submits unsupported conclusory claims in aid of her assertions that she gained any level of fame or notoriety. *See* Dkt. 24-1 ¶ 2 ("…I became one of the most well-recognized entertainers…"); *id.* ¶ 6 ("Between 2007 and 2013, I worked as a feature dancer at nightclubs across the United States."); *id.* ¶ 7 ("My name regularly appeared in press releases and on the internet."). These are conclusory opinions with no factual foundation. FRE 701.

[3] These filings are necessary in order for the USPTO to confirm that the applicant is actually using the mark at issue in commerce. Specifically, between the fifth and sixth year following registration of a trademark on the USPTO register, a registrant is required to file an affidavit with the USPTO that 1) states that the mark is in use in commerce; 2) sets forth the goods and services recited in the registration on or in connection with which the mark is in use in commerce; 3) is accompanied by specimens showing current use of the mark in commerce;

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 3:25-cv-10837-RS

On February 6, 2015, Scola applied for another registration for Lexi Love, for different services. *Id.* On October 27, 2015, Scola obtained Registration Number 4843150 (the "2015 Registration"), on the Supplemental Register, for the following services: "entertainment services in the nature of live audio performances by [sic]; entertainment services in the nature of live visual and audio performances; entertainment services in the nature of live visual and audio performances by an actor" in International Class 41. Dkt. 25, p. 6. The 2015 Registration was cancelled on May 13, 2022 for failure to file Section 8 maintenance filings. Grossman Decl., Ex. 3. Thus, after submitting two trademark applications for "Lexi Love", Scola failed to submit any evidence of use of the Lexi Love mark in commerce and both her first and second registrations were cancelled.[4]

On February 10, 2024, Scola applied for yet another registration for Lexi Love. *Id.* Scola did not own a trademark registration for the mark Lexi Love between May 2022 and March 18, 2025, when Scola ultimately obtained Registration Number 7727806 (the "2025 Registration") for the following services: "Talent agencies for performing artists being both human clients and digital talent in the nature of digital personas, virtual performers, and AI-driven talent; Talent management services for performing artists being both human clients and digital talent in the nature of digital personas, virtual performers, and AI-driven talent" and "Entertainment services in the nature of live audio performances by performing artists being both human clients and digital talent in the nature of digital personas, virtual performers, and AI-driven talent; Entertainment services in the nature of live visual and audio performances by performing artists being both human clients and digital talent in the

---

and 4) is accompanied by the fee prescribed by the Director of the USPTO. 15 U.S.C. § 1058. Failure to file such an affidavit results in automatic cancellation by the USPTO. *Id.*

[4] Scola's claims relating to the public's knowledge of her supposed mark are conclusory and baseless. FRE 701. She asserts that, for fifteen years she "actively enforced [her] rights against infringing users." Dkt. 24-1 ¶ 7. But there is no such evidence. She claims that her advocacy for safe sex in the adult film industry "was widely known." *Id.*, ¶ 9. Again, with no evidentiary support. She asserts that she appeared in a Super Bowl commercial, but her name was not used in that commercial. *Id.*, ¶30. She appears to have been filmed as an extra, sitting in a crowded cable car in an Oikos yogurt commercial. Dkt. 24-1, p. 70. And she claims that she has been "continuously using the mark since 2004" but failed to submit any such evidence to the USPTO when required, and does not provide the Court with any such evidence now.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

11

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 3:25-CV-10837-RS

nature of digital personas, virtual performers, and AI-driven talent; Personal appearances by an actor as a spokesperson for entertainment and education purposes" in International Classes 35 and 41, respectively. Dkt. 25, p. 9.

When the cast of *Drag Race* was announced in December of 2024, Scola alleges that she contacted *Drag Race* and Paramount's MTV to inform them of Scola's trademark rights in Lexi Love. Dkt. 24-1 ¶ 20. Scola also reported Barnes' Instagram account for trademark infringement. *Id.* ¶ 21. On August 1 and 2, 2025, Scola sent cease and desist letters to Barnes and WOW informing them of her purported rights to the name Lexi Love and instructing them to stop using the name. *Id.* ¶ 26. On August 25, 2025, counsel for WOW responded to Scola, explaining why her claims against WOW were baseless. Grossman Decl., ¶ 3, Ex. 1. Scola did not respond to this letter. *Id.* ¶ 4.

Scola failed to disclose to the Court that she received a clear response – in August of 2025 – to her claims of trademark infringement. Scola's Counterclaim and Motion intentionally omit this information – even though Scola directs the Court to her August 2025 cease-and-desist correspondence. It is undisputed that Scola was aware of her supposed claims in 2024, was told by WOW in August of 2025 that she had no viable claims, and that she waited until March of 2026 to assert any legal claims against WOW (or anyone else).

Although Scola failed to seek judicial relief, as a result of her conduct targeting Barnes, on December 19, 2025, Barnes filed a Complaint against Scola in this Court. Dkt. 1. Barnes' counsel granted Scola multiple extensions to allow her additional time to respond to the Complaint. Grossman Decl., ¶ 9. Nearly three months later, on March 9, 2026, Scola finally filed her Answer to the Complaint, a Counterclaim against Barnes, Paramount and WOW, and a Motion for Preliminary Injunction. Dkts. 19, 24. On March 16, 2025, counsel for Counter-Defendants requested an extension of time to oppose the Motion and an extension of time to respond to the Counterclaim. Grossman Decl., ¶ 7. Despite being granted multiple extensions by Barnes' counsel, Scola refused to stipulate with counsel for Counter-Defendants to an extension to oppose the Motion. *Id.* ¶ 8.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:25-CV-10837-RS

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). Thus, a preliminary injunction may be granted only if Scola demonstrates all four *Winter* factors: (1) a likelihood of irreparable harm without injunction; (2) likelihood of success on the merits; (3) that the balance of equities tips in her favor; and (4) that the public interest supports relief. *Id.* at 20. Because Scola cannot demonstrate any of the *Winter* factors – much less all of them – her Motion must be denied.

## DISCUSSION

### I.    Scola Cannot Demonstrate Irreparable Harm.

As a threshold matter, Scola's Motion must fail because she cannot show irreparable harm in the absence of an injunction. *Winter*, 555 U.S. at 22. Scola's assertion of irreparable harm rests partly on the Lanham Act's statutory presumption. Dkt. 24, p. 27. However, given Scola's failure to show a likelihood of success on the merits of her Lanham Act claims, as discussed below, she is not entitled to this presumption. *See Lamps Plus, Inc. v. Lamps Pro, LLC*, 2024 U.S. Dist. LEXIS 192790, at *18-19 (C.D. Cal. Oct. 23, 2024) (no presumption even where party shows serious questions as to merits). Because Scola cannot establish a likelihood of success on the merits, no presumption of irreparable harm is available under 15 U.S.C. § 1116(a). Scola must therefore submit evidence of likely irreparable harm, not "platitudes" or speculation. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1250 (9th Cir. 2013).

Even assuming that Scola somehow can show a likelihood of success on the merits of her claims against Counter-Defendants (she cannot), the Lanham Act's presumption of irreparable harm is readily rebutted. *See Kahala Franchising, LLC v. Real Faith, LLC*, 2022 U.S. Dist. LEXIS 91420, at *11-12 (C.D. Cal. May 20, 2022) (explaining presumption can be overcome by showing delay, that the alleged injuries are pecuniary, and, in that case, a lack of actual harm caused by consumer confusion). *Kahala Franchising* is instructive here. In *Kahala*, the Court found a presumption of irreparable harm was rebutted where the

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:25-CV-10837-RS

defendant demonstrated that it was "operat[ing] as a successful franchise, with many customers visiting the store and no indication that [it] was running the franchise in a way that fails to meet [the plaintiff]'s standards and expectations" for its brand. *Id.* at *12. While the plaintiff showed there "may be confusion" about association between the franchise and its brand, it "fail[ed] to show how this confusion is causing it any actual or potential harm." *Id.* The same is true here. Scola does not indicate how *Drag Race* would harm her "brand." That alone is sufficient to rebut the presumption and show that Scola faces no irreparable harm. *Id.*

The presumption is further rebutted by Scola's delay in seeking any injunctive relief, which strongly indicates Scola will not be irreparably harmed by the continued streaming of *Drag Race* on Counter-Defendants' platforms. "A preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights. By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action." *Lydo Enters. v. Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984). Here, Scola admits that she knew about Barnes using the Lexi Love mark when she was announced as a contestant on *Drag Race* **on December 4, 2024**. Dkt. 19 ¶ 33; *see also* Dkt. 24-1 ¶ 19 ("In December 2024, Cody Barnes was announced as a contestant on Season 17 of *RuPaul's Drag Race*, performing under the name Lexi Love. This was the first time I became aware of her use of my mark."). In fact, Scola stated that she contacted MTV and WOW on social media to notify them of her rights to Lexi Love on December 4, 2024. Dkt. 19 ¶ 34; Dkt. 24-1 ¶ 20. *Drag Race* aired from January 3, 2025 through April 18, 2025, during which Barnes appeared as Lexi Love in every episode. Dkt. 19 ¶ 36.

Over a year later, on December 19, 2025, Barnes filed a Complaint against Scola in this Court. Dkt. 1. It was not until at about **three months after Barnes filed the Complaint** – **and over 15 months after she first learned of the alleged infringement** – that Scola filed the instant Motion, claiming irreparable harm. Dkt. 24. This is precisely the type of delay-induced manufactured urgency that courts have noted strikes against a movant's request for a preliminary injunction, even if a presumption of irreparable harm is applied.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

14

OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:25-CV-10837-RS

*See, e.g., Real USFL, LLC v. Fox Sports, Inc.*, 2022 U.S. Dist. LEXIS 72857, at *31-32 (C.D. Cal. Apr. 14, 2022) (delay of less than a year "demonstrate[d] the lack of irreparable harm" despite statutory presumption); *Good Meat Project v. Good Meat, Inc.*, 716 F. Supp. 3d 783, 804-05 (N.D. Cal. 2024) ("[R]egardless of any presumption, the evidence" including delay "cuts against a finding of irreparable harm"); *Adir Int'l, LLC v. Unicomer S.A. de C.V.*, 2007 U.S. Dist. LEXIS 119486, at *63-65 & n.113 (C.D. Cal. Nov. 19, 2007) (denying preliminary injunction, despite party showing likelihood of success on the merits, given delay in moving for injunctive relief and collecting cases, including cases applying a presumption of harm).

Scola's lengthy delay in seeking injunctive relief "implies a lack of urgency and irreparable harm." *Miller v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 2001); *see Oakland Trib., Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."); *Playboy Enters. v. Netscape Commc'ns. Corp.*, 55 F. Supp. 2d 1070, 1080, 1090 (C.D. Cal. 1999) (five-month delay in seeking injunction supported denial of motion); *Metromedia Broad. Corp. v. MGM/UA Ent. Co.*, 611 F. Supp. 415, 427 (C.D. Cal. 1985) (four-month delay supported lack of irreparable harm); *Oren Enters. v. Stefanie Cove & Co.*, 2017 U.S. Dist. LEXIS 228400, at *16-17 (C.D. Cal. June 2, 2017) ("The sixth [sic] month delay in seeking injunctive relief establishes a lack of irreparable harm that is, on its own, a sufficient basis to deny the injunctive relief Plaintiffs seek."); *Javo Bev. Co. v. Cal. Extraction Ventures, Inc.*, 2020 U.S. Dist. LEXIS 31167, at *13 (S.D. Cal. Feb. 24, 2020) (six-month delay "alone weighs heavily against a finding of irreparable harm"); *Spiraledge, Inc. v. SeaWorld Ent., Inc.*, 2013 U.S. Dist. LEXIS 96616, at *14-15 (S.D. Cal. July 9, 2013) (13-month delay supports finding that plaintiff failed to demonstrate irreparable injury).

Scola further demonstrated the lack of irreparable injury she would suffer absent an injunction by failing to respond to letters from counsel for both WOW and Barnes. Grossman Decl., ¶¶ 3-4; Dkt. 19 (Answer), ¶¶ 48, 50. In fact, counsel for Barnes sent letters to Scola on November 20, 2025, December 8, 2025, and February 2, 2026, all of which were

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

ignored.  Dkt. 19 (Answer), ¶¶ 48, 50.  Moreover, Scola's admission that she adopted a "wait and see" approach to determine "what the effects of the infringement would be" shows that Scola would not suffer imminent harm without the requested injunction.  Dkt. 24, p. 21. *Miller*, 991 F.2d at 544 (explaining that "a lack of urgency" implies a lack of irreparable harm); *see Oakland Trib., Inc.*, 762 F.2d at 1377 (same).

Relatedly, because of Scola's delay in filing the Motion, the purported harm to Scola as a result of Barnes' popularity has already been done.  *See Edge Games, Inc. v. Elec. Arts, Inc.*, 745 F. Supp. 2d 1101, 1117-18 (N.D. Cal. 2010) ("Due to this unreasonable delay, the bulk of the alleged 'irreparable harm' to the asserted marks . . . has already been done. Edge Games has not shown why issuing a preliminary injunction *now* would prevent any irreparable harm to its marks beyond the 'harm' that has already occurred.") (emphasis in original); *see also Real USFL, LLC*, 2022 U.S. Dist. LEXIS 72857, at *29 ("The purpose of a preliminary injunction is to prevent future harm, not to remedy past harm. . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (internal quotations omitted).

Finally, any potential damage to Scola as a result of Counter-Defendants' actions can be addressed by monetary compensation.  *See Real USFL, LLC*, 2022 U.S. Dist. LEXIS 72857, at *31 ("Because there is absolutely no evidence that Plaintiff intends to establish a competing football league, any damages incurred by Plaintiff will directly result from its loss of potential licensing income which can be easily compensated by monetary damages.").

For these reasons, Scola has failed to establish irreparable injury and her Motion must be denied.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16

OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:25-CV-10837-RS

## II.    Scola Cannot Show A Likelihood Of Success On Her Infringement Claim Against Counter-Defendants Because Scola's Claim Violates The First Amendment And Fails The *Rogers* Test.

### A.    Scola's Infringement Claim Fails Under The *Rogers* Test.

Scola's trademark infringement claim fails because it cannot overcome the *Rogers* test.  Traditionally, courts apply a likelihood-of-confusion test to claims of trademark infringement.  *Lost Int'l, LLC v. Germanotta*, 2025 U.S. Dist. LEXIS 271706, at *7 (C.D. Cal. Dec. 15, 2025).  However, when the alleged infringement involves some aspect of an expressive work, courts will first apply the test created by *Rogers v. Grimaldi* to determine whether the Lanham Act applies.  *Hara v. Netflix, Inc.*, 146 F.4th 872, 877 (9th Cir. 2025). The *Rogers* test requires the defendant to first "make a threshold legal showing that its allegedly infringing use is part of an expressive work protected by the First Amendment." *Id.* at 882.  If the defendant meets this burden, the Lanham Act does not apply **unless** the defendant's use of the mark: (1) is not artistically relevant to the work; or (2) explicitly misleads consumers as to the source or content of the work.[5]  *Id.*

### 1.    Counter-Defendants' Purported Use of The Lexi Love Mark Is In Connection With An Expressive Work.

Scola's allegations in her Counterclaim, along with the arguments in her Motion, make clear that Counter-Defendants' purported use of the Lexi Love mark is in connection with an expressive work.  *See* Dkt. 19 ¶ 4 ("In 2025, Barnes appeared on Season 17 of the popular reality television show *RuPaul's Drag Race* ('*Drag Race*') under the name Lexi Love."); *id.* ¶ 37 ("Every week from January 2, 2025, to April 18, 2025, Paramount aired *Drag Race* on MTV . . . It contemporaneously made the entire season streamable on its streaming platform, Paramount+. WOW produced *Drag Race* and also made the entire season and related *Drag Race* content streamable on its streaming platform, WOW Presents

---

[5] Scola has sued Paramount and WOW for infringement relating to the production and distribution of a television series.  Counter-Defendants' conduct is protected by the First Amendment and, whether they have been sued for direct or contributory infringement, the *Rogers* test should apply here because, with respect to the Counter-Defendants, they are being accused of violating the Lanham Act in connection with the use of a purported mark in an expressive work.

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 3:25-CV-10837-RS

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

Plus."); *id.* ¶ 43 ("Both companies [Paramount and WOW] continue to make Season 17 of *Drag Race* streamable on their respective streaming services and to post content on social media identifying Barnes as Lexi Love."). The Ninth Circuit has found that drag performances and television shows are expressive works. *See Imperial Sovereign Ct. v. Knudsen*, 2026 U.S. App. LEXIS 7480, at *58 (9th Cir. Mar. 13, 2026) ("Performing or expressing a particular persona is indistinguishable from performing a character in a play or film or competing in a beauty pageant, all of which is undoubtedly purely expressive activity."); *see also Rogers v. Grimaldi*, 875 F.2d 994, 997 (2d Cir. 1989) ("Movies, plays, books, and songs are all indisputably works of artistic expression and deserve protection."); *Twentieth Century Fox TV v. Empire Distrib., Inc.*, 875 F.3d 1192, 1196 (9th Cir. 2017) (a "television show itself is clearly an expressive work, as are the associated songs and albums") (internal citation omitted).

Furthermore, casting and selection decisions are protected speech under the First Amendment. *Green v. Miss USA, LLC*, 52 F.4th 773, 788 (9th Cir. 2022) ("Miss United States of America expresses its message in part through whom it chooses as its contestants, and the First Amendment affords it the right to do so."). As the Eastern District of California court in *Napear v. Bonneville Int'l Corp.*, stated recently:

> The few courts to have been called upon to address First Amendment protections for casting decisions made in the producing of a creative work have universally found that where "regulating the casting process necessarily regulates the end product . . . casting and the resulting work of entertainment are inseparable and must *both* be protected to ensure that the producers' freedom of speech is not abridged."

2025 U.S. Dist. LEXIS 61375, at *17-18 (E.D. Cal. Mar. 31, 2025) (emphasis in original); *see also Moore v. Hadestown Broadway LLC*, 722 F. Supp. 3d 229, 258 (S.D.N.Y. 2024) (explaining that a casting decision "clearly implicates Defendant's exercise of its creative expression and artistic decisions" and therefore the First Amendment); *Claybrooks v. ABC, Inc.*, 898 F. Supp. 2d 986, 999 (M.D. Tenn. 2012) ("[T]he Shows' casting decisions are part and parcel of the Shows' creative content, which the plaintiffs seek to reform. That is plainly an attempt to regulate the content of the Shows, which the First Amendment forbids.").

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:25-CV-10837-RS

Counter-Defendants' inclusion of a drag performer named "Lexi Love" in *Drag Race* is clearly and unequivocally protected by the First Amendment and therefore cannot amount to trademark infringement, either directly or contributorily.  Courts have consistently recognized that the use of marks in expressive works, such as television shows like *Drag Race*, is protected under the First Amendment.  *See E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100-01 (9th Cir. 2008) (First Amendment is implicated when a mark is used in the body of an expressive work); *Segal v. Segel*, 2022 U.S. Dist. LEXIS 11832, at *38 (S.D. Cal. Jan. 21, 2022) (explaining that there are First Amendment concerns when the allegedly infringing use is in the title or body of an expressive work).

Therefore, the *Rogers* test applies, and the burden shifts to Scola to demonstrate that Counter-Defendants' purported use of the Lexi Love mark has no artistic relevance to *Drag Race* or that Counter-Defendants explicitly mislead consumers as to the source or content of *Drag Race*.

> **a.    Scola Fails To Establish That Counter-Defendants' Use Of The Lexi Love Mark Had No Artistic Relevance.**

Under the first prong of the *Rogers* test, in determining whether the use of the trademark or other identifying material has any artistic relevance to the underlying work, "[t]he bar is set low: 'the level of relevance merely must be above zero.'" *Twentieth Century Fox TV*, 875 F.3d at 1198.  Courts have explained that this prong "is meant to ensure that the title in question uses the potential trademark to express or describe its own content rather than merely to attract notoriety using a trademark in its title that is irrelevant to the underlying work." *CI Games S.A. v. Destination Films*, 2016 U.S. Dist. LEXIS 189118, at *20 (C.D. Cal. Oct. 25, 2016); *see also Stewart Surfboards, Inc. v. Disney Book Grp., LLC*, 2011 U.S. Dist. LEXIS 155444, at *19 (C.D. Cal. May 11, 2011) ("For this reason, only minimal artistic relevance—enough relevance to satisfy the Court that a use of a trademark is truly expressive, as opposed to a commercial use that simply uses the mark to exploit its publicity value—is necessary to satisfy the first *Rogers* prong.").

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:25-CV-10837-RS

Here, it is clear that there is artistic relevance to Counter-Defendants' use of the name Lexi Love in Season 17 of its television show. In particular, *Drag Race* is a reality competition show where drag queens compete for the title of "America's Next Drag Superstar" and a cash prize. Barnes, as Lexi Love, is a drag queen and model who was cast and competed on the Season 17 of *Drag Race*. Dkt. 19 ¶¶ 3-4. Barnes has publicly been using the name Lexi Love for decades, and performs under that name in the United States and abroad. The decision to cast Barnes in *Drag Race* as Lexi Love has artistic relevance to the underlying work, which is *Drag Race*. Therefore, Scola fails to satisfy the first prong of the *Rogers* test. *See Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 900 (C.D. Cal. 2013) (finding that the use of the mark "easily met the artistic relevance requirement under *Rogers* because their use is not wholly unrelated to the content of the work").

**b.     Scola Fails To Demonstrate That Counter-Defendants Explicitly Mislead Consumers About The Source Or Content Of *Drag Race*.**

Under the second prong of the *Rogers* test, the creator of the expressive work can be subject to a Lanham Act claim if the creator uses the mark or material **to explicitly mislead** consumers as to the source or content of the work. *Hara*, 146 F.4th at 883. The relevant question "is whether there was 'an explicit indication, overt claim, or explicit misstatement about the source of the work.'" *Id.*

Counter-Defendants have not, and do not, explicitly mislead consumers about the source or content of *Drag Race*, and therefore Scola's claim fails the *Rogers* test. Scola does not point to anything showing that Counter-Defendants explicitly (or even implicitly) suggest that *Drag Race* is related to Scola in any way. *See E.S.S. Ent. 2000, Inc.*, 547 F.3d at 1100-01 (rejecting trademark infringement claim against creator of video game, and holding that "[a] reasonable consumer would not think a company that owns one strip club in East Lost Angeles, which is not well known to the public at large, also produces a technologically sophisticated video game like San Andreas"); *see also Twentieth Century Fox TV*, 875 F.3d at 1199 ("As 'the use of a mark alone is not enough to satisfy this prong of the *Rogers* test,' Fox's *Empire* show, which contains no overt claims or explicit references

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:25-CV-10837-RS

to Empire Distribution, is not explicitly misleading . . . ") (internal citation omitted); *Mattel, Inc. v. MCA Records*, 296 F.3d 894, 902 (9th Cir. 2002) ("The *only* indication that Mattel might be associated with the song is the use of Barbie in the title; if this were enough to satisfy this prong of the *Rogers* test, it would render *Rogers* a nullity.") (emphasis in original).

Scola only argues that her mark is confused with Barnes' work as Lexi Love. Dkt. 24, pp. 9-16. This is not enough to establish that use of Lexi Love by Counter-Defendants is explicitly misleading. The Ninth Circuit's discussion of this issue in *Hara* is directly on point:

> Vox alleges that her family, friends, fellow drag performers, and fans contacted her "express[ing] confusion and concern about her connection with" *Q-Force*. Accepting her allegations as true, these allegations are insufficient to satisfy the second prong of *Rogers*. As we explained in *Brown*, "[t]o be relevant, evidence must relate to the nature of the behavior of the identifying material's user, not the impact of the use." . . . [T]he allegations fail to demonstrate an "explicit indication," "overt claim," or "explicit misstatement" by Defendants regarding *Q-Force*'s relationship with Vox.

146 F.4th at 884. So too here, Scola does not meet this heightened burden set forth by *Rogers* and therefore the Lanham Act does not apply and Scola cannot succeed on her contributory infringement claim against Counter-Defendants. On this basis, the Court should deny Scola's Motion. *See Lost Int'l, LLC*, 2025 U.S. Dist. LEXIS 271706, at *13 (denying preliminary injunction because "defendant's use of the Mark is artistically relevant and does not explicitly mislead consumers as to the source or content of the challenged work" and therefore, "the Lanham Act does not apply, and [plaintiff] cannot succeed on its claim[] for trademark infringement"); *Pepperdine Univ. v. Netflix, Inc.*, 2025 U.S. Dist. LEXIS 36920, at *12-13 (C.D. Cal. Feb. 26, 2025) (denying request for TRO where defendant satisfied the *Rogers* test).

### c.    Counter-Defendants Do Not Use The Lexi Love Mark As A Source Identifier And Therefore The *Rogers* Test Applies.

The *Rogers* test has been held to be inapplicable in situations when the defendant is using the name or mark at issue as a "source identifier." *See Jack Daniel's Props. v. VIP*

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21

OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:25-CV-10837-RS

*Prods., LLC*, 599 U.S. 140, 145 (2023) (explaining the *Rogers* test "is not appropriate when the accused infringer has used a trademark to designate the source of its own goods"). Under the Lanham Act, source identifiers function to indicate the source of goods, and to distinguish them from ones manufactured or sold by others. *Yuga Labs, Inc. v. Ripps*, 144 F.4th 1137, 1166 (9th Cir. 2025). A mark is not used as a source identifier when it is "used not to designate a work's source, but solely to perform some other expressive function." *Hara*, 146 F.4th at 879.

Here, Scola does not – and cannot – show that the use of the Lexi Love mark on *Drag Race* indicated or even suggested that Scola (or "Lexi Love") was the source or origin of *Drag Race*. Therefore, Scola has not argued – because she cannot – that Counter-Defendants' use of the Lexi Love mark was as a source identifier. Counter-Defendants merely use the Lexi Love name as the drag name of a contestant on the television show that they produce and promote. Counter-Defendants do not use the Lexi Love mark for any other purpose and Scola does not allege otherwise. *See Haas Automation, Inc. v. Steiner*, 750 F. Supp. 3d 1107, 1118 (C.D. Cal. 2024) ("[H]ere, the use of the Haas Marks is not used to tell the consumer who published the book or the source of the book. Defendants do not use the Haas name as the title, publisher name, or as a source identifying moniker . . ."); *Pepperdine Univ.*, 2025 U.S. Dist. LEXIS 36920, at *10 ("Here, Defendants are not using the Waves Marks as source identifying marks. Defendants' only product at issue is the *Running Point* series, and there is no showing that Defendants have suggested that Pepperdine is the source of the series."); *see also JTH Tax LLC v. AMC Networks Inc.*, 694 F. Supp. 3d 315, 333 (S.D.N.Y. 2023) (explaining that the mark was not used "to identify the source" of the television show or any of the defendants' products, and therefore found that the defendants had not used the marks "as their own identifying trademark") (internal quotation omitted).

Because Counter-Defendants' use of the name Lexi Love is simply in connection with the identity of a cast member in a television series, that "use" does not identify the source of the television series – which is created and produced by Counter-Defendants.

OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:25-CV-10837-RS

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

Scola cannot overcome the protections granted by the First Amendment and therefore has no likelihood of success on her infringement claim against Counter-Defendants.

III.  **Scola Cannot Establish A Likelihood Of Success On Her Infringement Claim Against Counter-Defendants For The Additional Reason That Her Direct Trademark Infringement Claim Against Barnes Fails.**

Here, Scola cannot succeed on her contributory infringement claim against Counter-Defendants because she cannot – and does not – show a likelihood of success on her direct infringement claim against Barnes.  To succeed on a claim for contributory trademark infringement, there must be a valid claim for direct trademark infringement.  *See Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 897 F. Supp. 2d 856, 867 (N.D. Cal. 2012) ("[T]he existence of direct infringement is a necessary element of a claim for contributory infringement.").

A.  **Scola Cannot Show A Likelihood Of Success On Her Direct Trademark Infringement Claim Against Barnes Because She Made Intentional Misrepresentations In Order To Secure Her Only Active Registration.**

Scola cannot establish a claim for direct trademark infringement against Barnes because Scola's only active registration – for U.S. Trademark Registration Number 7727802 – is subject to cancellation and is therefore not a valid or protectable mark.  Under the Lanham Act, a plaintiff asserting a direct trademark infringement claim must establish two primary elements: (1) that they own a valid and legally protectable trademark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.  *Applied Info. Scis. Corp. v. eBay, Inc.* 511 F.3d 966, 969 (9th Cir. 2007).

Though Scola does have an active trademark registration, that registration is subject to cancellation.  A trademark registration constitutes prima facie evidence of the validity of the registered mark, shifting the burden to the accused infringer to rebut the presumption. *DC Labs Inc. v. Celebrity Signatures Int'l, Inc.*, 2013 U.S. Dist. LEXIS 110752, *17 (S.D. Cal. Aug. 6, 2013) (citations omitted).  However, an application is subject to cancellation when an applicant knowingly makes false, material representations of fact, with the intent to deceive the USPTO, in connection with his or her application.  *In re Bose Corp.*, 580 F.3d 1240, 1242 (Fed. Cir. 2009).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23

OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:25-CV-10837-RS

Here, there is undeniable evidence that Scola misled the USPTO in connection with obtaining her only active registration.  In fact, in connection with her February 2024 application, resulting in Registration Number 7727806, Scola falsely stated that her "first use" date of the mark in connection with the applied-for services was 2004.  Scola included this date with the intention of misleading the USPTO and obtaining a registration of the mark Lexi Love with a first use date that predates Barnes' 2009 use of Lexi Love.  Scola's trademark application claimed that her first "use in commerce" was August 16, 2004 in connection with the following services: "Entertainment services in the nature of live audio performances by performing artists being both human clients and digital talent in the nature of digital personas, virtual performers, and AI-driven talent; entertainment services in the nature of live visual and audio performances by performing artists being both human clients and digital talent in the nature of digital personas, virtual performers, and AI-driven talent; Personal appearances by an actor as a spokesperson for entertainment and education purposes." *See* Dkt. 25, p. 9.

However, in her sworn Declaration in support of this Motion, in describing her use of the Lexi Love mark from 2004 through 2013, she does not mention digital personas, virtual performers, or AI-driven talent.  *See generally* Dkt. 24-1.  In fact, **none of these mediums were in existence in 2004**, when Scola claims to have begun using the mark in connection with these services.

Scola has intentionally included first use dates that do not align with when she has actually used the mark Lexi Love for the specific and identified services.  Meaning, while Scola's business has supposedly changed (i.e. from adult entertainer to actor to provider of AI-driven talent), Scola has maintained the same first use in commerce date and is intentionally misleading the USPTO to believe that she has been using her mark in connection with a broader set of services in an effort to obtain registrations for her mark.  This is not how trademarks work.  A first use in commerce date is not a moving target, and does not apply liberally to services as they morph across the entertainment spectrum.  Scola has maintained that her first use in commerce of the mark Lexi Love in connection with AI

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:25-CV-10837-RS

services, is the same as when she started using the mark for adult entertainment. This is patently false and intentionally misleading.

Because Scola's US Trademark Registration Number 7727802 is subject to cancellation, Scola is unable to show a likelihood of success on her direct trademark infringement claim against Barnes.

**B.** **Scola Cannot Establish A Likelihood Of Success On Her Direct Trademark Infringement Claim Because Barnes' Use Of The Lexi Love Mark In Connection With Entertainment Services Predated Scola's Use.**

Even if Scola did have a valid and enforceable trademark to the Lexi Love mark (she does not), Barnes' use of the Lexi Love mark in connection with "entertainment services" predates Scola's use of the Lexi Love mark in connection with "entertainment services" and, therefore, Barnes has priority over the trademark. According to the Lanham Act, a trademark registration on the principal register, while evidence of the registrant's exclusive right to use the registered mark in commerce or in connection with the goods or services specified in the registration, shall not preclude another person from proving any legal or equitable defense or defect, including another party's prior use. 15 U.S.C. § 1115(b).

Scola's rights in the Lexi Love mark are tenuous, at best, considering the numerous cancelled trademark registrations, her failure to establish any legitimate use resulting in abandonment, and her modification of the purported services covered by the many applications she filed before the USPTO. Scola's 2008 Registration was cancelled on March 6, 2015 because Scola failed to file the required Section 8 maintenance filings between the fifth and sixth year following registration. *See* Grossman Decl., Ex. 2. The 2008 Registration covered adult entertainment services (*see* Dkt. 25, p. 4), and the fact that the 2008 Registration was cancelled, coupled with Scola's admission that she ceased to provide those services, establishes that Scola abandoned rights in the Lexi Love mark in connection with adult entertainment services at the latest in 2015.

Beginning in 2009, Barnes has performed live as Lexi Love, not as an adult entertainer but as a drag performer and live personality. Dkt. 1 ¶¶ 13, 16.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

25

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 3:25-CV-10837-RS

It was not until 2010 that Scola admits to transitioning from offering adult entertainment services to actor or live entertainment services. Dkt. 19 ¶ 22; Dkt. 24-1 ¶¶ 3, 12. Several years later, in 2015, Scola applied for a trademark registration for the Lexi Love mark in connection with "entertainment services in the nature of live audio performances . . . live visual and audio performances by an actor." Dkt. 25, p. 6. Based on the undisputed facts, it is clear that **Barnes has priority of use in the Lexi Love mark in connection with live entertainment services well before Scola began using the mark for these services** or registered the Lexi Love trademark in connection with "entertainment services."

For this additional reason, Scola cannot succeed on her direct infringement claim against Barnes and therefore cannot succeed on her contributory infringement claim against Counter-Defendants.

## IV. Scola Cannot Establish A Likelihood Of Success On Her Unfair Competition Claim Against Counter-Defendants.

Scola's unfair competition cause of action is based on – and relies entirely upon – Scola's contributory trademark infringement claim against Counter-Defendants. Because Scola failed to show a likelihood of success on the merits of her contributory infringement claim against Counter-Defendants – as established above – she cannot establish a likelihood of success on her unfair competition claim on which the contributory trademark infringement is based. *See La Carniceria Meat Mkt. Grp. v. Carniceria Prime Meat Mkt. LLC*, 2025 U.S. Dist. LEXIS 141965, at *42 (C.D. Cal. June 13, 2025) (holding that because the plaintiff failed to establish a likelihood of success on the merits of trademark infringement claim, the plaintiff also failed to establish a likelihood of success on the merits of its unfair competition claim).

## V. The Balance Of Equities Strongly Favors Counter-Defendants.

Courts weigh the relative hardships and consider the effect on each party of the granting or withholding of the requested relief. For several different reasons, the balance of equities favors Counter-Defendants. As an initial matter, because Scola cannot show a likelihood of success on the merits, there is a risk that an injunction would prohibit lawful

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:25-CV-10837-RS

activity. This weighs against issuing an injunction. *See Masangsoft Inc. v. Azua*, 2025 U.S. Dist. LEXIS 216447, at *12-13 (C.D. Cal. Aug. 27, 2025) (holding the balance of equities favors the defendant because the lack of likelihood of success on the merits leads to a risk that an injunction would prohibit lawful activity). Similarly, the fact that Scola delayed in bringing the Motion – **over 15 months after she first learned of the purported infringement** – favors Counter-Defendants. *See Zamfir v. Casperlabs, LLC*, 528 F. Supp. 3d 1136, 1153 (S.D. Cal. 2021) ("[I]n large part because Plaintiff unreasonably delayed bringing this motion despite being on notice of Defendant's activities, the equities do not tip sharply in favor of Plaintiff."). Further, the requested injunction would require Counter-Defendants to remove an entire season of *Drag Race* from its streaming platforms, which would also impose a large cost on Counter-Defendants. *See Playmakers, LLC v. ESPN, Inc.*, 297 F. Supp. 2d 1277, 1285 (W.D. Wash. 2003) (explaining defendants would suffer harm from the issuance of the injunction from the lost investment in the creation and promotion of the television program and from future sales of advertising for re-runs). Moreover, the fact that there are First Amendment values at stake also weighs against injunctive relief. *See Spolar v. Discovery Commc'ns, LLC*, 2020 U.S. Dist. LEXIS 247006, at *21 (C.D. Cal. Oct. 2, 2020) (the balance of equities favors defendant "[w]ith First Amendment values at stake").

For all of these reasons, the balance of equities favors Counter-Defendants and weighs against issuing the preliminary injunction.

## VI.    The Public Interest Weighs Against Issuing An Injunction.

The public interest is not served by suppressing expressive speech. *Drag Race* is a reality competition series where drag queens compete to be crowned "America's Next Drag Superstar." Dkt. 19 ¶ 32. *Drag Race* has aired for 17 seasons. *Id.* Through her requested injunction, Scola seeks to prevent audiences from viewing the most recent season of *Drag Race*. In other words, Scola seeks a prior restraint – the "most serious and the least tolerable infringement on First Amendment rights," that bears a "historical and heavy presumption against" it. *Garcia v. Google, Inc.*, 786 F.3d 733, 747 (9th Cir. 2015) (en banc); *see also id.* ("[A] takedown order . . . is a classic prior restraint of speech.").

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

27

OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:25-CV-10837-RS

Courts within and outside of the Ninth Circuit have denied injunctions in similar situations. *See Garcia*, 786 F.3d at 747 (vacating injunction requiring Google to take down film trailer as prior restraint); *Spolar*, 2020 U.S. Dist. LEXIS 247006, at *20-21 (allegations that documentary contained trade secrets was not an "exceptional case" justifying prior restraint of temporary restraining order blocking release); *Elements Spirits, Inc. v. Iconic Brands, Inc.*, 2015 U.S. Dist. LEXIS 75986, at *30 (C.D. Cal. June 11, 2015) (denying injunction in the form of a "prior restraint on Defendants' speech"); *Baskin v. Royal Goode Prods. LLC*, 2021 U.S. Dist. LEXIS 248510, at *15 (M.D. Fla. Nov. 19, 2021) (request for injunction that would preclude release of Tiger King 2 would be impermissible prior restraint); *In re King World Prods., Inc.*, 898 F.2d 56, 59-60 (6th Cir. 1990) (reversing temporary restraining order blocking dissemination of video allegedly obtained in violation of anti-wiretap and tort law). Thus, the public interest is best served by denying the requested preliminary injunction.

## CONCLUSION

For the foregoing reasons, Scola's request for a preliminary injunction should be denied.

Dated: March 23, 2026

LOEB & LOEB LLP
DAVID GROSSMAN
JENNIFER G. KAHN

By: _____
David Grossman
Attorneys for Counter-Defendants

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 3:25-CV-10837-RS