UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CODY BARNES,

Plaintiff,

v.

SELENA SCOLA, et al.,

Defendants.

Case No. 25-cv-10837-RS

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Both Plaintiff Cody Barnes and Counterclaimant Selena Scola are entertainers who have performed for years using the same name, Lexi Love. Scola brings the present motion for a preliminary injunction seeking to enjoin Barnes and two additional Counterclaim-Defendants from using that name in connection with her professional activities. Preliminary injunctive relief is an extraordinary remedy. While Scola's trademark claims warrant serious concern, they hinge on a factual record rife with questions about whose use of the name expanded into which channels first. Injunctive relief cannot issue on such a record. Accordingly, the motion is denied.

## II. BACKGROUND

Barnes is a professional drag performer who began using the name Lexi Love in 2009. Barnes' fame grew with her participation in Season 17 of the popular show *RuPaul's Drag Race*. Barnes' casting was announced in December 2024, and the season aired between January and April 2025. Barnes, as Lexi Love, appeared in every episode. Counterclaim-Defendant World of Wonder Productions, Inc. ("WOW") produced Season 17, and Counterclaim-Defendant

United States District Court
Northern District of California

Paramount Skydance Corporation ("Paramount") aired it on MTV. Both continue to make the season available to stream on their streaming platforms.

Scola first began performing under the name Lexi Love in 2004 in adult films. After 2010, Scola stopped acting in adult films, and under the name Lexi Love expanded into films, television shows, commercials, video games, music videos, musical recordings and tours, film and podcast production, among other entertainment and influencer roles. Since 2024, she contends that she has released a new album, been cast in a feature film, and acted in a Super Bowl LX commercial.

In December 2007, Scola applied for a trademark with the United States Patent and Trademark Office for the trademark LEXI LOVE.[1] In July 2008, Scola obtained Registration 3475773 (the "2008 Registration") in International Class 41, which is for education and entertainment, for a range of entertainment services.[2] The 2008 Registration was cancelled in March 2015 due to failure to file Section 8 maintenance filings. However, in February 2015 Scola applied for another registration for LEXI LOVE, again for entertainment services[3] in International Class 41. In October 2015, she obtained Registration 4843150 (the "2015 Registration"). The 2015 Registration was cancelled on May 13, 2022 for failure, again, to file Section 8 maintenance filings. In February 2024, Scola reapplied for federal registration of the mark in International Class 35, which is for advertising and business, and again in International Cass 41.[4] The application was

---

[1] The Request for Judicial Notice, Dkt. 25, is granted.

[2] The 2008 Registration was for "entertainment services, namely, providing a website featuring photographic, audio, video and prose presentations featuring adult content; entertainment services, namely, live televised and movie appearances by a professional entertainer; entertainment services, namely, personal appearances by a adult film star." Dkt. 25, Ex. 1.

[3] The 2015 Registration was for "entertainment services in the nature of live audio performances by [sic]; entertainment services in the nature of live visual and audio performances; entertainment services in the nature of live visual and audio performances by an actor" Dkt. 25, Ex. 2.

[4] This registration is for the following services: "Talent agencies for performing artists being both human clients and digital talent in the nature of digital personas, virtual performers, and AI-driven talent; Talent management services for performing artists being both human clients and digital talent in the nature of digital personas, virtual performers, and AI-driven talent" and "Entertainment services in the nature of live audio performances by performing artists being both human clients and digital talent in the nature of digital personas, virtual performers, and AI-driven talent; Entertainment services in the nature of live visual and audio performances by performing

ORDER RE PI
CASE No. 25-cv-10837-RS

published for opposition in the Trademark Official Gazette on January 28, 2025, and a certificate of registration was issued on March 18, 2025. *Id.* The federal registration is currently active.

Scola learned of Barnes' use of the name in December 2024 with the announcement of Barnes' participation in *RuPaul's Drag Race*. Shortly thereafter, Scola contacted Paramount's MTV and Barnes to inform them of her trademark rights. Barnes' use of the name continued. In August 2025, Scola sent cease and desist letters to Paramount, WOW, and Barnes. Barnes again continued to use the name and encouraged her fans to do the same, and Paramount and WOW continued to post content featuring Barnes as Lexi Love.

On December 19, 2025, Barnes filed this action against Scola, seeking a declaratory judgment invalidating Scola's LEXI LOVE mark and damages caused by trademark infringement, unfair competition, intentional interference with contractual relations, and intentional interference with prospective economic advantage. Scola filed counterclaims on March 9, 2026, asserting trademark infringement, conversion, and unfair competition against Barnes and a third-party complaint against Paramount and WOW for trademark infringement. Scola now moves for an injunction against Barnes, Paramount, and WOW enjoining them from continuing to use the LEXI LOVE mark.

### III. LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). To obtain preliminary injunctive relief, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20, 129 S.Ct. 365. A court may "balance the elements" of this test, "so long as a certain

---

artists being both human clients and digital talent in the nature of digital personas, virtual performers, and AI-driven talent; Personal appearances by an actor as a spokesperson for entertainment and education purposes" in International Classes 35 and 41, respectively. Dkt. 25, Ex. 3

threshold showing is made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam). Thus, for example, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quotation marks omitted).

## IV. DISCUSSION

Scola's trademark infringement claim against Barnes turns on whether Scola or Barnes is the senior user of the LEXI LOVE mark in the relevant entertainment services, i.e., entertainment circles more mainstream than adult films or drag shows, respectively. The record is not clear.

The Lanham Act protects against another's use of "any word, term, name, symbol, or device, or any combination thereof… which… is likely to cause confusion, or to cause mistake… as to the origin… of his or her goods." *Jason Scott Collection, Inc. v. Trendily Furniture, Ltd. Liab. Co.*, 68 F.4th 1203, 1212–13 (9th Cir. 2023) (citing 15 U.S.C. § 1125(a)(1)(A)). To prevail on a claim of trademark infringement, a party 'must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.' " *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006)). Federal registration of a trademark is prima facie evidence of the validity of a mark. *Zobmondo Entm't v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010). Yet, "even if a trademark is not federally registered, it may still be enforceable under § 43(a) of the Lanham Act." *Matal v. Tam*, 582 U.S. 218, 225, 137 S.Ct. 1744, 198 L.Ed.2d 366 (2017). The plaintiff must demonstrate (1) prior use of the mark in commerce, and (2) entitlement to protection. *OpenAI, Inc. v. Open Artificial Intelligence, Inc.*, 719 F. Supp. 3d 1033, 1046–47 (N.D. Cal. 2024).

Scola applied for registration on February 10, 2024, and therefore, she is presumed to have a valid and enforceable mark since that date. However, both Barnes and Scola argue their use of the mark started much earlier. Scola alleges her use of the mark began in 2004 in the adult film

ORDER RE PI
CASE NO. 25-cv-10837-RS

4

industry and continued after she left that industry in 2010 with other types of performance and entertainment. Barnes alleges she began using the mark as a drag performer in 2010. By the end of season 17 of *RuPaul's Drag Race* in April 2025, there is no question that Barnes was using the Lexi Love name and was recognized as a drag queen and public persona.

However, Barnes, for her part, seems to have used other names besides Lexi Love after her alleged first use in 2010. She also provides no support besides her unverified complaint for her early use of the name. Dkt. 32, Barnes Opp., at 16 (citing Dkt. 1, Compl., ¶ 32); Dkt. 30, Paramount Opp., at 25 (citing Dkt. 1, Compl., ¶¶ 13, 16). Nor does she allege she used the name before *RuPaul's Drag Race* outside of the specific use of drag show performances. On the other hand, despite Scola's position that she has used the mark continually since 2004, her prior registrations, the 2008 Registration and the 2015 Registration, both lapsed for failure to file Section 8 maintenance filings; these filings are necessary for the USPTO to confirm the mark is in fact being used in commerce by the applicant. The first example she cites showing her continued use after leaving the adult film industry is in 2012, two years after Barnes' alleged first use in 2010. Dkt. 24, Mot. for PI, at 25. It is not sufficiently clear that Scola is the senior mark holder.

### V. CONCLUSION

In short, the present record does not demonstrate the requisite likelihood of success on the merits on Scola's claim for trademark infringement, notwithstanding how that claim may be developed in the course of this litigation.[5] Accordingly, a preliminary injunction is not warranted. In light of the insufficiency with respect to success on the merits, the other injunctive factors such as irreparable harm need not be reached.

---

[5] Since her contributory infringement, UCL, and conversion claims hinge on her trademark infringement claim, injunctive relief cannot issue on these claims either.

**IT IS SO ORDERED**.

Dated: April 17, 2026

_____
RICHARD SEEBORG
Chief United States District Judge

United States District Court
Northern District of California