UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CODY BARNES,<br><br>        Plaintiff,<br><br>    v.<br><br>SELENA SCOLA,<br><br>        Defendant. | Case No.  25-cv-10837-RS<br><br>**ORDER DENYING<br>MOTION TO DISMISS** |
| SELENA SCOLA,<br><br>        Counterclaimant &<br>        Third-Party Plaintiff,<br><br>    v.<br><br>CODY BARNES, PARAMOUNT<br>SKYDANCE CORPORATION and<br>WORLD OF WONDER PRODUCTIONS,<br>INC.,<br><br>        Counterclaim Defendant &<br>        Third-Party Defendants. | |

## I. INTRODUCTION

World of Wonder Productions, Inc. ("WOW") and Paramount Skydance Corporation ("Paramount") move to dismiss contributory trademark infringement and unfair competition claims brought against them. They argue they invoke the alleged trademark in only an expressive manner and thus are protected by the First Amendment under the *Rogers* test. For the reasons stated below, this argument fails. The motion to dismiss is denied.[1]

---

[1] Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument,

## II. BACKGROUND

### A.  Factual Background[2]

Selena Scola is an actress, entertainer, and influencer. Scola began performing under the name Lexi Love in 2004 in adult films. Between 2004 and 2010, she starred in over 600 such films. During this time, she also worked as a featured dancer at night clubs across the country and was hired to help promote companies at industry expositions. She appeared at red carpet events, award shows, and conventions and guest-starred on radio talk shows.

In 2009, she became an advocate for safe sex in the adult entertainment industry and began speaking out about conditions under which she would not work on an adult film. Then, in 2010, Scola shifted from acting in adult films. She worked as a consultant on adult films and continued to attend industry events and appeared on radio shows but began expanding her work, again under the name Lexi Love, into independent films, television shows, commercials, video games, music videos, musical recordings and tours, film and podcast production, and other entertainment and influencer roles. Scola also grew and maintained a strong, monetized social media presence. She holds U.S. Trademark Registration No. 7,727,806 for LEXI LOVE in International Class 41, covering talent agency and management services, as well as entertainment performance services.

Cody Barnes is a professional drag performer who alleges she began using the name Lexi Love in 2009. Barnes also performed under the names Alexstacy Love, Lexi DVV Love, and Lexi V. Love—the latter of which she used as recently as 2021. Then in 2025, Barnes' fame grew with her participation in Season 17 of the popular show *RuPaul's Drag Race*. Barnes' casting was announced in December 2024, and the season aired between January and April 2025. Barnes, as Lexi Love, appeared in every episode. WOW produced Season 17, and Paramount aired it on MTV.

---

and the hearing set for September 3, 2026 is vacated.

[2] Unless otherwise stated, this Order accepts well-pled factual allegations made in the answer, counterclaims, and third-party complaint, *see* Dkt. 19, as true for the purposes of this motion to dismiss.

In December 2024, with the announcement of Barnes' participation in *RuPaul's Drag Race*, Scola learned of Barnes' use of the name and contacted Paramount's MTV and Barnes to inform them of her trademark rights. Yet, Barnes' use of the name continued. In August 2025, Scola sent cease and desist letters to Paramount, WOW, and Barnes. Barnes again continued to use the name and encouraged her fans to do the same, and Paramount and WOW continued to post content featuring Barnes as Lexi Love. Throughout this time, Scola sent takedown requests to social media platforms and third parties regarding Barnes' use of the LEXI LOVE mark.

Barnes's fame has diluted Scola's online presence. Scola has been tagged repeatedly on social media by users intending to tag Barnes, searches for Lexi Love return content about Barnes, and, as a result of Barnes' fame, Scola has lost business opportunities. Scola has sent numerous takedown requests regarding Barnes' content and accounts using the Lexi Love name.

### B. Procedural History

On December 19, 2025, Barnes filed this action against Scola. Barnes seeks a declaratory judgment invalidating Scola's LEXI LOVE mark and damages caused by trademark infringement, unfair competition, intentional interference with contractual relations, and intentional interference with prospective economic advantage.

On March 9, 2026, Scola filed her answer and asserted counterclaims against Barnes for trademark infringement, conversion, and unfair competition and filed a third-party complaint against Paramount and WOW for unfair competition and contributory trademark infringement. At the same time, Scola moved for a preliminary injunction against Barnes, Paramount, and WOW enjoining them from continuing to use the LEXI LOVE mark. The request for a preliminary injunction was denied on April 17, 2026.

On May 29, 2026, Paramount and WOW filed the present motion, moving to dismiss Scolas' third claim for unfair competition and fourth claim for contributory trademark infringement under the Lanham Act. Scola opposes the motion.

### III. LEGAL STANDARD

Rule 12(b)(6) governs motions to dismiss for failure to state a claim. A complaint must

United States District Court
Northern District of California

contain a short and plain statement of the claim showing the pleader is entitled to relief, Fed. R. Civ. P. 8(a), and "giv[ing] the defendant fair notice of what the… claim is and the grounds upon which it rests," *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic*, 550 U.S. at 555). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (internal quotation marks and citation omitted). When evaluating such a motion, courts "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

In dismissing a complaint, leave to amend must be granted unless it is clear the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corrections,* 66 F.3d 245, 248 (9th Cir.1995). When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp,* 90 F.3d 386, 393 (9th Cir.1996).

### IV. DISCUSSION

The motion to dismiss by Paramount and WOW turns entirely on whether Scola's claims for contributory trademark infringement and unfair competition[3] are foreclosed by the first amendment protection afforded under the *Rogers* test. The *Rogers* test was first articulated by the Second Circuit in *Rogers v. Grimaldi.* 875 F.2d 994 (2d Cir. 1989) and seeks to balance trademark protection with free expression.

It is possible for "expressive works [to] reference a celebrity [or other trademark] 'without

---

[3] Paramount and WOW argue that *Rogers* forecloses Scola's unfair competition claim for two reasons: one, "the First Amendment provides the same full defense against Scola's state law claim for unfair competition," and two, "Scola's unfair competition cause of action… is based on– and relies entirely upon – Scola's contributory infringement claim." Dkt. 60, Mot., at 18 (collecting cases). Even assuming this is true, the motion fails for the forthcoming reasons.

United States District Court
Northern District of California

any overt indication of authorship or endorsement.' " *Hara v. Netflix, Inc.*, 146 F.4th 872, 877 (9th Cir. 2025) (citing *Rogers*, 875 F.2d at 999). A reference to a mark may serve as a "prop or background element." *Id.* at 880. For example, the song titled "Bette Davis Eyes" references Bette Davis, but "the celebrity is not overtly identified as the source or sponsor of the work," *Id.* at 877 (citing *Rogers*, 875 F.2d at 999). In such cases, when the challenged mark is used " '*solely* to perform some other expressive function,' " and " '*not* to designate a work's source,' " the First Amendment protects against Lanham Act liability—in other words, the *Rogers* test must be applied. *Id.* at 879–880 (quoting *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140, 154 (2023)) (emphases added). On the other hand, "when a challenged trademark use functions as source-identifying," there is no conflict between first amendment and Lanham Act rights, and "the likelihood-of-confusion inquiry does enough work to account for the interest in free expression." *Jack Daniel's*, 599 U.S. at 159 (internal citations and quotation marks omitted). "Nor does that result change because the use of a mark has other expressive content." *Id.* at 157.[4]

In *Jack Daniel's*, the Supreme Court considered whether *Rogers* protection should apply in a suit for trademark infringement brought by Jack Daniel's against a dog-toy manufacturer. 599 U.S. at 153 (2023). The manufacturer sold a dog toy that was shaped like a Jack Daniel's whiskey bottle and had the phrases "Bad Spaniels" where "Jack Daniel's" normally appears and "Old No. 2 on Your Tennessee Carpet" in the place of "Old No. 7 Brand Tennessee Sour Mash Whiskey." *Id.* at 144. The dog manufacturer conceded it "use[d] its Bad Spaniels trademark and trade dress as source identifiers of its dog toy." *Id.* at 159–60. Accordingly, even though the mark was also used expressively, namely as parody, *Rogers* protection did not apply because the " 'mark [was being] used as a mark,' " *Hara* 146 F.4th at 879 (quoting *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th

---

[4] If the result did change, "the *Rogers* exception would become the general rule" and "encompass[] just about everything." *Id.* at 158–59 (cleaned up). Yet, Paramount and WOW use this all-encompassing version of the rule. They insist that "if the alleged infringement involves *some aspect* of an expressive work," the *Rogers* test must be applied. Dkt. 60, Mot., at 10 (emphasis added). They have it wrong. They ignore the fact that *Jack Daniel's* expressly overruled the Ninth Circuit's earlier broad-sweeping formulation of *Rogers*' applicability as reaching any use of a trademark that included an expressive message. *Jack Daniel's*, 599 U.S. at 158–159.

United States District Court
Northern District of California

1022, 1031 (9th Cir. 2024)) (discussing *Jack Daniel's*, 599 U.S. at 154)), "to identify and distinguish [the manufacturer's] goods," *Jack Daniel's*, 599 U.S. at 160.

In *Hara*, the Ninth Circuit considered whether use of a drag queen's likeness in a cartoon show about queer superspies warranted application of the *Rogers* test. 146 F.4th at 879. The Ninth Circuit held that the *Rogers* test should be applied "because the alleged ten-second use of [the celebrity's] image and likeness in one episode… and the related teaser and still image in no way suggests or identifies [the celebrity] as a source or origin of the show." *Id*. The referential character appeared "as an unspeaking background character whose sole role [wa]s to perform a fan 'thworp' as a punchline to another character's joke" in a bar scene that "is incidental to the overall theme of the episode and series." *Id.* at 880 (cleaned up). In other words, the show used the celebrity's likeness "no different[ly] than the use of football legend Jim Brown's likeness in the *Madden NFL* video game": it was "a prop or background element," "help[ing] ground the scene of a West Hollywood gay bar in realism." *Id.* The celebrity failed to "allege that the use of her likeness in [the show], the official teaser, or the still image indicated or even suggested that she was the source or origin of the series." *Id.* In short, her "likeness was [not] used by [d]efendants *as a mark*." *Id.* (emphasis in original)

Here, use of the mark LEXI LOVE, to which Paramount and WOW are alleged to contribute, is source-identifying.[5] Paramount and WOW insist otherwise, explaining that "Lexi Love" is "not [used] to identify the source of the series itself." Dkt. 60, Mot., at 18. Yet, they concede that they display "Lexi Love" "in connection with the *identity* of a cast member," "as the drag name of a… contestant on the television show that they produce and *promote*." *Id.* (emphasis added). *See also id.* at 7 (Paramount and WOW "produc[e], air[], and stream[] Season 17 of *Drag Race*, and post[] content identifying Barnes as Lexi Love[.]"); *id*. at 9 (Paramount and WOW

---

[5] Paramount and WOW argue that the question is whether *their* use of the mark is source-identifying, but a claim for contributory trademark infringement is based on knowledge of and contribution to *another's* infringement. *See Perfect 10, Inc. v. Via Intern. Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007). So, it is also sufficient if they have contributed to Barnes' source-identifying use of the mark.

"post[] content on their social media pages identifying Barnes[.]"). In essence, they are saying, tune in to see Lexi Love! This usage is not merely "a prop or background element," "help[ing to] ground the scene of a [drag race] in realism." *Hara*, 146 F.4th at 880. Rather, Paramount and WOW use "Lexi Love" to: (1) identify a real performing artist offering entertainment services; (2) promote that artist across national television, paid streaming platforms, and social media; and (3) commercially exploit that identity for their and Barnes' financial benefit. (Dkt. 19, Answer, ¶¶ 37, 43, 69.). In short, "Lexi Love" is used as a mark. Accordingly, since the alleged conduct involves use of a mark as a mark, *Rogers* protection does not apply, and Paramount and WOW's argument to the contrary fails. *See Hara* 146 F.4th at 879.

**V. CONCLUSION**

Paramount and WOW rest their entire motion on the *Rogers* exception. For the foregoing reasons, it does not apply here. The motion to dismiss is denied.

**IT IS SO ORDERED**.

Dated: July 16, 2026

RICHARD SEEBORG
United States District Judge

United States District Court
Northern District of California